DEADERICK PAGING COMPANY, INC.;
Dial Page, Inc.; Multipage, Inc.; and
Jackson Mobilephone, Inc., Petition-
ers/Appellants,

v.

TENNESSEE PUBLIC SERVICE COM-
MISSION; A+ Communications, Inc.;
Mobile Communications Corporation of
America; and South Central Bell Tele-
phone Company, Inc., Respondents/Ap-
pellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 4, 1993.

Permission to Appeal Denied by
Supreme Court Nov. 29, 1993.

Jess Campbell, Knoxville, for appellant
Deaderick Paging Co., Inc.

Roland M. Lowell, Nashville, for appellant
Dial Page, Inc.

W. Collins Bonds, Milan, for appellant
Multipage, Inc.

J. Clarence Evans, Nashville, for appellant
Jackson Mobilephone, Inc.

William H. Waller, Jr., William M. Leech,
Jr., and James Holt Walker, Nashville, for
appellee A+ Communications, Inc.

Charles W. Burson, Atty. Gen. and Reporter, Pamela Brussard, Asst. Atty. Gen., Henry Walker, General Counsel and D. Billye Sanders, Asst. Gen. Counsel, Tennessee Public Service Com'n, Nashville, for appellee Public Service Com'n.

T.G. Pappas, Nashville, for Appellee Mobile Communications Corp. of America.

Charles Howorth, Nashville, for appellee South Cent. Bell Telephone Co., Inc.

## OPINION

CANTRELL, Judge.

The issue in this case is whether the Tennessee Public Service Commission could validly approve a transfer of South Central Bell Telephone Company's radio paging service (which it operated without a radio common carrier's license because of its land line telephone system) to A+ Communications, Inc. which had neither a radio common carrier's license nor a land line telephone system. We hold that in approving the transfer the Tennessee Public Service Commission exceeded its authority.

### I.

South Central Bell Telephone Company ("Bell") operates a land line telephone service in a large part of Tennessee. In most of its service area, Bell also provides a radio paging service. Because Tenn.Code Ann. § 65–30–104 exempted land line telephone or telegraph utilities regulated by the Tennessee Public Service Commission ("PSC") from the application of the Radio Common Carrier ("RCC") Act, Bell was not required to have a RCC certificate to operate its paging service.

For many years A+ Communications, Inc. ("A+") had been Bell's exclusive agent in Tennessee for marketing its paging services. Early in 1992 Bell determined to withdraw from the paging business and sell its related assets to A+. The contract was made contingent on A+ receiving a certificate of convenience and necessity from the PSC to operate as a RCC. On February 3, 1992, A+ filed its application for a certificate of convenience and necessity to operate a paging business as a RCC or in the alternative as a land line carrier. Later, Bell filed a petition

seeking to withdraw its tariffs upon the completion of its transaction with A+.

Another section of the RCC Act provided that two RCC's in each service area was the optimum number to provide the highest level of overall service. Tenn.Code Ann. § 65–30–105(f)(2). Because large parts of Bell's service area may have already had two RCC's operating in them, A+ was hampered in obtaining the authority to operate a paging service in Bell's service area. A+ therefore sought a declaratory ruling from the PSC that the PSC could grant three certificates of need for RCC in an area not served by a land line carrier.

The case before the PSC proceeded toward a final hearing on A+'s request for a declaratory ruling. Only in a pre-hearing memorandum of law filed on November 6, 1992, did A+ seek to exercise Bell's former paging authority as a regulated carrier. In the declaratory ruling on November 6, 1992, the PSC in a split decision ruled that Bell could sell its paging authority and that the purchaser would stand in Bell's shoes as a land line carrier with authority to provide the paging service. The PSC did not rule directly on the question raised in the motion for a declaratory ruling concerning the number of RCC certificates available in any area formerly served by a land line carrier.

The PSC then heard evidence as to the qualifications of A+ and as to whether the transfer would be in the public interest. A+ withdrew its application for RCC authority and sought only approval of a transfer of Bell's authority to provide paging services. On December 7, 1992, the PSC issued its final order which allowed A+ to step into Bell's shoes and provide "one way paging services in Bell's current local exchange territory." The broad grant to A+ would allow it to provide paging services in areas not previously served by Bell but where Bell operated a local exchange telephone system. Representatives of both companies, however, disclaimed any attempt to expand the paging services beyond what Bell had been providing.

## II.

■ Judicial review of a decision of the PSC is limited. The court may, however, reverse the decision if it violates statutory provisions or is in excess of the agency's statutory authority. Tenn.Code Ann. § 4–5–322(h)(1), (2). It is apparent that at all times relevant to this controversy, the operation of a RCC required a certificate of convenience and necessity from the PSC unless the operator was a land line telephone or telegraph utility. Tenn.Code Ann. §§ 65–30–104, –105(a). In addition, the legislature had decided and declared as the public policy of the state that two certificates in any single area provided the highest level of overall service. Tenn.Code Ann. § 65–30–105(f)(2).

We think the PSC lacked the power to grant authority to A+ in violation of these statutes. "The powers of the Commission must be found in the statutes. If they are not there, they are non-existent." *Tennessee-Carolina Transport, Inc. v. Pentecost*, 206 Tenn. 551, 556, 334 S.W.2d 950, 953 (1960).

The PSC and A+, however, insist that an amendment to Title 65, Chapter 4, Part 1, passed by the legislature in March of 1993, against the background of this litigation, ratified the action taken by the PSC. The amendment in its entirety is:

AN ACT to amend Tennessee Code Annotated, Title 65, Chapter 4, Part 1, relative to the authority of the Tennessee Public Service Commission to approve a public utility's transfer of all or any part of its authority to provide utility services, derived from a certificate of public convenience and necessity, to any individual, partnership, corporation, or other entity; relative to the factors to be considered by the Tennessee Public Service Commission in approving such transfer; and relative to the authority of the parties to the transfer following its approval by the Tennessee Public Service Commission.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Title 65, Chapter 4, Part 1, is amended by adding the following as a new Section 65–4–113 after Section 65–4–112 and by redesignating the existing Section 65–4–113 and subsequent sections accordingly:

Section 65–4–113.

(a) No public utility, as defined in Tennessee Code Annotated, Section 65–4–101, shall transfer all or any part of its authority to provide utility services, derived from its certificate of public convenience and necessity issued by the Tennessee Public Service Commission, to any individual, partnership, corporation or other entity without first obtaining the approval of the Tennessee Public Service Commission.

(b) Upon petition for approval of the transfer of authority to provide utility services, the Tennessee Public Service Commission shall take into consideration all relevant factors, including, but not limited to, the suitability, the financial responsibility, and capability of the proposed transferee to perform efficiently the utility services to be transferred and the benefit to the consuming public to be gained from the transfer. The Tennessee Public Service Commission shall approve the transfer after consideration of all relevant factors and upon finding that such transfer furthers the public interest.

(c) Following approval of the transfer pursuant to this section, the transferee shall be granted full authority to provide the transferred services subject to the continuing regulation of the Tennessee Public Service Commission. The transferor shall no longer have any authority to provide the transferred services, but shall retain authority to provide other services, if any are retained, which were not included in such transfer.

(d) This section shall not apply to any transfers falling under the provisions of Tennessee Code Annotated, Section 65–4–112. The section shall apply to all other utility service transfers, including, but not limited to the transfer of the authority to provide communications services held by a land line telephone company pursuant to Tennessee Code Annotated, Section 65–30–105(h).

SECTION 2. This act shall take effect upon becoming a law, the public welfare requiring it.

We concede that, without appearing to do so directly, the amendment may have been designed to ratify the action taken by the PSC a few months earlier. But the attempt may have suffered from being too cleverly concealed to accomplish its purpose. As we see it the amendment merely says that when a regulated utility seeks to transfer part of its authority to another entity (specifically, communication services provided by a land line telephone company) it shall get the permission of the PSC; the PSC shall consider all relevant factors and approve the transfer if the transfer furthers the public interest; and after the transfer, the transferee will operate subject to the continuing regulation of the PSC.

It seems to us that a relevant factor to be considered by the PSC is whether the transferee is disqualified by law from performing the service sought to be transferred—as A+ would be unless the amendment also repealed by implication Tenn.Code Ann. §§ 65–30–104, –105(a), –105(f)(2). The parties have not argued that the 1993 amendment repealed the RCC statutes by implication, and we are convinced that it did not do so. *See Reams v. Trostel Mechanical Industries, Inc.*, 522 S.W.2d 170, 173 (Tenn.1975); *Tennessee–Carolina Transportation, Inc. v. Pentecost*, 211 Tenn. 72, 76–78, 362 S.W.2d 461, 463 (1962).

The PSC and A+ also refer to the debate in committees and on the floor of both houses of the legislature as aids in construing the 1993 amendment. We agree that the legislative history of an act may help shed some light on what the legislature intended, but, after considering the comments on this bill, we conclude that the bill was passed without any thought that it would affect the RCC statutes or that it would override a positive declaration of the legislature concerning the number of RCC certificates in any area.

The parties have argued other matters in their briefs and before this court, but we consider the issue of the PSC's jurisdiction to be dispositive of the appeal. We will not, therefore, address the other issues raised.

The PSC's order of December 7, 1992, approving the transfer of Bell's one-way paging services to A+ is reversed. The cause is remanded to the PSC for any further proceedings that may be necessary. Tax the costs on appeal equally to the PSC and A+ Communications, Inc.

TODD, P.J., and LEWIS, J., concur.