JACKSON MOBILPHONE COMPANY,
INC., Plaintiff/Appellant,

v.

TENNESSEE PUBLIC SERVICE
COMM.; Multipage, Inc.; Deaderick
Paging Co., Inc.; d/b/a Mid–South Pag-
ing, Inc.; Mobile Communications Corp.
of America; South Central Bell Tele-
phone Co., Inc.; and A+ Communica-
tions, Inc., Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section.

Dec. 22, 1993.

Rehearing Denied Jan. 12, 1994.

Application for Permission to Appeal
Denied by Supreme Court
May 2, 1994.

J. Clarence Evans, Evans, Jones & Reynolds, Nashville, for Jackson Mobilphone, Inc.

Charles W. Burson, Atty. Gen. and Reporter and Pamela Bingham Broussard, Asst. Atty. Gen., Nashville, for Public Service Com'n.

D. Duane Cook, Lexington, KY and W. Collins Bonds, Kizer, Bonds, Boswell & Crocker, Milan, for Multipage, Inc.

## OPINION

KOCH, Judge.

This appeal involves one of three related proceedings before the Public Service Commission dealing with Tennessee's growing electronic paging business. Jackson Mobilphone Co. and Multipage, Inc. sought authority to operate as radio common carriers in the three-county Memphis market area. The commission reversed its administrative judge's initial order awarding the authority to Jackson Mobilphone and granted the authority to Multipage. Jackson Mobilphone has appealed directly to this court,[1] asserting that the commission had no rational basis for its decision. We have determined that the commission's decision is arbitrary and is not supported by substantial and material evidence. Accordingly, we vacate the order granting Multipage the authority to serve the Memphis market area and remand the case to the commission for further proceedings.

### I.

The Public Service Commission has regulated radio common carriers[2] in Tennessee for at least thirty years. The General Assembly specifically defined the commission's authority over radio common carriers in 1972 when it enacted the State Radio Common Carrier Act ("SRCCA") that is now codified at Tenn.Code Ann. §§ 65-30-101-112 (1993).[3] The General Assembly's declaration of public policy states that the public's interest in adequate, economical, and efficient radio common carrier services would be best served by a regulatory scheme that eliminated "unfair or destructive competitive practices." Tenn. Code Ann. § 65-30-102.

The commission initially authorized only one radio common carrier to operate in each market area. In 1975 it granted authority to a second radio common carrier to operate in the Nashville market area; however, the Tennessee Supreme Court overruled the commission's decision and held that the SRCCA created a preference for existing radio common carriers as long as they were rendering adequate service. *Nashville Mobilphone Co. v. Atkins,* 536 S.W.2d 335, 340 (Tenn.1976). The Court's construction of the SRCCA effectively erected an insurmountable barrier to other radio common carriers entering the market for the next fifteen years.

Mobile Communications Corporation of America ("MCCA") eventually obtained authority to provide radio common carrier services in the Chattanooga, Nashville, and Memphis markets. MCCA merged with BellSouth Corporation ("BellSouth") in 1988, and both MCCA and BellSouth sought approval to transfer MCCA's radio common carrier authority to BellSouth. The commission approved the transfer on June 30, 1988 but also determined that it would permit other radio common carriers to enter the markets formerly served by MCCA because, in the commission's mind, the merger had effectively eliminated competition in these areas.[4] *Joint Petition of MCCA and Bell-*

---

1. Tenn.Code Ann. § 4-5-322(b)(1) (1991) requires appeals from the Public Service Commission's final decisions to be filed with this court in accordance with Tenn.R.App.P. 12.

2. A radio common carrier provides radio services to the public in the form of either two-way voice communication or one-way signals transmitted to a paging or signalling device commonly known as a "beeper." Tenn.Code Ann. § 65-30-

103(2) (1993); *Nashville Mobilphone Co. v. Woods,* 655 S.W.2d 934, 935 (Tenn.1983).

3. Act of Mar. 23, 1972, ch. 641, 1972 Tenn.Pub. Acts 564.

4. BellSouth was already authorized to provide radio common carrier services since it was a regulated land line telephone company. As a result of the merger, BellSouth owned both the land line telephone company and the only radio

*South,* Docket No. 88–7567 (Public Serv. Comm'n June 30, 1988).

The commission's decision to open the Chattanooga, Nashville, and Memphis market areas caused a flurry of applications from companies desiring to enter these lucrative radio telecommunications markets. Between 1989 and March 1991, nine companies applied for authorization to provide radio common carrier services in one or more of the Chattanooga, Nashville, or Memphis market areas. Jackson Mobilphone, a radio common carrier already serving areas of West Tennessee contiguous to Memphis, was one of the applicants seeking authorization to serve the Memphis market area.

The commission's staff filed a petition for a declaratory ruling questioning the commission's authority to grant additional certificates of authority in these market areas. In 1990 the commission reversed itself and determined that the SRCCA, as construed by the Tennessee Supreme Court in *Nashville Mobilphone Co. v. Atkins,* permitted only one radio common carrier to operate in each market area. The commission thereafter stayed any further proceedings while one of the applicants appealed its decision to this court.[5]

Several legislators introduced a bill in early 1991, while the *Nashville Mobilphone Co. v. Atkins* appeal was still pending, to amend the SRCCA to permit two radio common carriers in each market area. Anticipating

the bill's passage, two entrepreneurs with experience in operating paging companies in several other southern states incorporated Multipage, Inc. and filed applications for authority to operate in the Chattanooga, Nashville, Jackson, and Memphis markets. Thereafter, the General Assembly enacted Tenn.Code Ann. § 65–30–105(f)(2) which permits two radio common carriers in each market area in order "to provide adequate services, including meaningful competition." [6]

After this court affirmed its interpretation of the pre–1991 SRCCA, the commission lifted its earlier stay of all the pending proceedings and determined that it would consider all the pending applications in three separate proceedings. One proceeding concerned the Knoxville and Tri–Cities market areas; another involved the Jackson market area; and the third proceeding involved the Chattanooga, Nashville, and Memphis market areas.[7] This appeal concerns only the proceeding involving the Memphis market area which consists of Shelby, Tipton, and Fayette Counties.[8]

By late 1991, the commission had received radio common carrier applications from ten companies who desired to provide paging service in one or more of the Chattanooga, Nashville, or Memphis market areas. Four of these applicants eventually withdrew, and of the six remaining applicants, four sought authority for the Memphis market area. By

common carrier offering radio telecommunications services in the Chattanooga, Nashville, and Memphis market areas.

5. This court eventually affirmed the commission's decision. *Dial–A–Page, Inc. v. Bissell,* 823 S.W.2d 202 (Tenn.Ct.App.1991).

6. Act of May 1, 1991, ch. 343, § 1, 1991 Tenn. Pub.Acts 547. Tenn.Code Ann. § 65–30–105(f)(2)'s limit on the number of radio common carriers in each market remains intact today. This court determined earlier this year that 1993 legislation now codified at Tenn.Code Ann. § 65–4–113 (1993) did not repeal the limitation by implication. *Deaderick Paging Co. v. Tennessee Public Serv. Comm'n,* 867 S.W.2d 729, 732 (Tenn.Ct.App.1993).

7. The record does not reveal the reasons for conducting three proceedings or the reasons for including the Memphis market area in the pro-

ceeding involving the Nashville and Chattanooga market areas instead of considering it together with the Jackson market area. No one has taken issue with the grouping of the West Tennessee market areas despite the interrelationship between Memphis, Jackson, and West Tennessee.

8. The commission's decisions in the other proceedings were the subject of other appeals to this court. Another Middle Section panel affirmed the commission's decision with regard to the Knoxville market on December 22, 1993. *Mobilecomm of Tenn., Inc. v. Tenn. Pub. Serv. Comm'n,* 876 S.W.2d 101 (Tenn.Ct.App.1993), *perm. app. denied* (Tenn. Mar. 28, 1994). A Western Section panel vacated the commission's decision with regard to the Jackson market on Mar. 4, 1994. *Mobilecomm of Tenn., Inc. v. Tenn. Pub. Serv. Comm'n,* App. No. 01–A–01–9303–BC–00138, 1994 WL 69590 (Tenn.Ct.App. Mar. 4, 1994), *perm. app. denied* (Tenn. July 11, 1994).

the time of the hearing before the administrative law judge, only Jackson Mobilphone and Multipage were still seeking approval to operate in the Memphis market area.

The administrative law judge assigned to conduct all the radio common carrier hearings heard evidence in February and March, 1992 concerning the Chattanooga, Nashville, and Memphis market areas. The commission's staff recommended that Jackson Mobilphone should receive the authority in the Memphis market area, and on June 19, 1992, the administrative law judge filed a detailed initial decision awarding the Memphis market area to Jackson Mobilphone. Multipage filed exceptions to the initial order. On September 15, 1992, the commission affirmed the administrative law judge's decisions concerning the Nashville and Chattanooga market areas but awarded the authority for the Memphis market area to Multipage. The commission based its decision on the same evidentiary record that its administrative law judge had relied upon to reach the opposite conclusion.

After Jackson Mobilphone appealed the commission's decision to this court, the United States Congress amended the Federal Communications Act of 1934, 47 U.S.C. § 332(c) (1988), to preempt the authority of state and local governments to regulate the entry of commercial or private mobile services into their markets. Omnibus Budget Reconciliation Act of 1993, Act of Aug. 10, 1993, Pub.L. No. 103–66, § 6002(b)(2), 1993 U.S.C.C.A.N. (107 Stat.) 312, 394 (to be codified at 47 U.S.C. § 332(c)(3)(A)). Thus, unless Congress restores the commission's authority, the commission will no longer be able to control the entry of radio common carriers into Tennessee's markets after August 10, 1994.[9]

## II.

This court reviews the commission's adjudicatory decisions using the same standards of review applicable to the decisions of other administrative agencies. Thus, in accordance with Tenn.Code Ann. § 4–5–322(h) (1991), we review the commission's "findings, inferences, conclusions or decisions" to determine whether they are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in light of the entire record.

Jackson Mobilphone bases its challenge to the commission's decision to award Multipage the Memphis market on Tenn.Code Ann. § 4–5–322(h)(4) and Tenn.Code Ann. § 4–5–322(h)(5).

 The standards of review in Tenn. Code Ann. § 4–5–322(h)(4) and Tenn.Code Ann. § 4–5–322(h)(5) are narrower than the standard of review normally applicable to other civil cases. They are also related but are not synonymous. Agency decisions not supported by substantial and material evidence are arbitrary and capricious. *C.F. Indus., Inc. v. Tennessee Public Serv. Comm'n,* 599 S.W.2d 536, 540 (Tenn.1980); *Pace v. Garbage Disposal Dist. of Washington County,* 54 Tenn.App. 263, 266, 390 S.W.2d 461, 463 (1965). However, agency decisions with adequate evidentiary support may still be arbitrary and capricious if caused by a clear error in judgment. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 284, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974); *Girard v. City of Glenn Falls,* 173 A.D.2d 113, 577 N.Y.S.2d 496, 499 (1991); 5 Kenneth C. Davis, *Administrative Law Treatise* § 29:7, at 358 (2d ed. 1984).

 A reviewing court should not apply Tenn.Code Ann. § 4–5–322(h)(4)'s "arbitrary and capricious" standard of review mechanically. In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error

---

9. The 1993 amendment to 47 U.S.C. § 332(c) will become effective one year after the Omnibus Budget Reconciliation Act of 1993's enactment. Act of Aug. 10, 1993, Pub.L. No. 103–66, § 6002(c)(2)(A).

in judgment. *American Paper Inst. v. American Elec. Power Serv. Corp.,* 461 U.S. 402, 413, 103 S.Ct. 1921, 1928, 76 L.Ed.2d 22 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, *State ex rel. Nixon v. McCanless,* 176 Tenn. 352, 354, 141 S.W.2d 885, 886 (1940), or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion. *Wagner v. City of Omaha,* 236 Neb. 843, 464 N.W.2d 175, 180 (1991); *Ramsey v. Department of Human Servs.,* 301 Ark. 285, 783 S.W.2d 361, 364 (1990).

■■ Likewise, a reviewing court should not apply Tenn.Code Ann. § 4–5–322(h)(5)'s "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." *Clay County Manor v. State Dep't of Health & Environment,* 849 S.W.2d 755, 759 (Tenn.1993); *Southern Ry. v. State Bd. of Equalization,* 682 S.W.2d 196, 199 (Tenn.1984). The court need not reweigh the evidence, *Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 667 (Tenn.1977), and the agency's decision need not be supported by a preponderance of the evidence. *Street v. State Bd. of Equalization,* 812 S.W.2d 583, 585 (Tenn.App.1990). The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed. *Wayne County v. Tennessee Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 279 (Tenn.App.1988).

### III.

Contested case proceedings involving certificates of authority for radio common carriers must be consistent not only with the SRCCA and the commission's enabling statutes but also with the Uniform Administrative Procedures Act ("UAPA"). While the commission may conduct contested case proceedings itself, it may also appoint a hearing officer [10] to hear all or any part of a particular case. Tenn.Code Ann. § 4–5–301(a)(2) (1991); Tenn.Code Ann. § 65–2–111 (1993).

An administrative judge who hears a contested case without the commission present must prepare a proposed or initial order containing findings of fact, conclusions of law, and the policy reasons for the decision. Tenn.Code Ann. §§ 4–5–314(c), 65–2–111. Parties dissatisfied with the proposed or initial order may file exceptions requesting the commission to review the administrative judge's order and to enter its own final order. Tenn.Code Ann. §§ 4–5–315(a), 65–2–111.

The commission is not simply acting as an error-correcting body when it reviews a proposed or initial order. It must personally review the relevant portions of the administrative record, and then it must reach its own decision. Tenn.Code Ann. §§ 4–5–315(f), 65–2–111. When the commission agrees with the administrative judge's proposed decision, it may simply adopt the initial order as its own. When, however, the commission disagrees with the administrative judge's proposed decision, it must file its own final order that identifies its disagreements with the initial order and includes its own findings of fact, conclusions of law, and policy reasons for its decision. Tenn.Code Ann. §§ 4–5–315(i), 65–2–112.

The portions of the commission's September 15, 1992 order awarding Multipage the certificate of authority to provide radio common carrier service in the Memphis market area are deficient for three reasons. First, the commission misconstrued several of its administrative judge's findings and conclusions concerning Multipage. Second, the commission's order emphasizes the commission's disagreements with the administrative judge's decision without evaluating all the

---

10. Tenn.Code Ann. § 65–2–111 (1993) empowers the commission to use "hearing examiners" who must either be commission members or regular commission employees. For the purposes of the UAPA, these hearing examiners will either be "administrative judges" or "hearing officers" depending on whether they have a license to practice law. Tenn.Code Ann. §§ 4–5–102(1), 102(4) (1991).

factors that must be considered in awarding a radio common carrier certificate of authority. Third, several of the commission's conclusions concerning Multipage's ability to provide paging services efficiently are not supported by substantial and material evidence.

## IV..

■ Radio common carrier licensing decisions require a comparative analysis when two or more applicants are competing for authority to serve the same market area. The purpose of the analysis is to determine which of the competing applicants will best promote the SRCCA's policy objectives. The SRCCA directs the commission to weigh each application in light of these objectives. Thus, our role is not to substitute our judgment for the commission's but rather to determine whether the commission's findings are based on substantial and material evidence and whether the commission's decision rests on sound reasoning consistent with the SRCCA.

### A.

The SRCCA contains seven factors intended to focus the commission's attention on the needs of the public, the qualifications of the applicants, and the radio common carrier industry's competitive environment. Tenn. Code Ann. § 65–30–102 and Tenn.Code Ann. § 65–30–105(e) focus on the need for the service by directing the commission to consider "public need," to promote "adequate, economical, and efficient radio common carrier service to the citizens and residents of this state," and to maintain "harmony between radio common carriers and their subscribers."

In addition to public need, Tenn.Code Ann. § 65–30–105(e) focuses on the applicants' qualifications by directing the commission to consider each applicant's "suitability," "financial responsibility," and "ability ... to perform efficiently." Likewise, Tenn.Code Ann. §§ 65–30–102 and 65–30–105(f)(2) focus on competition within the radio common carrier industry by requiring the commission to consider whether its decisions promote "meaningful competition within any service area"

while at the same time discouraging "unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices."

■ While the commission's licensing decisions must take all the SRCCA's factors into consideration, nothing in the SRCCA prevents the commission from considering other factors that might be relevant in a particular proceeding. In fact, Tenn.Code Ann. § 65–30–105(e) specifically empowers the commission to take "other things" into consideration.

### B.

The proof concerning the history and background of the two competing applicants and their principals is straightforward and undisputed. The disagreements concern the applicants' service plans, their respective ability to provide adequate, economical, and efficient radio common carrier service to the public, and the effect of the commission's decision on competition within the radio common carrier industry.

Jackson Mobilphone is a corporation headquartered in Jackson that has provided radio common carrier service to counties in West Tennessee for over twenty years. By the time of the administrative hearing, it served approximately 1,700 subscribers in all West Tennessee counties in the 901 area code except the three-county Memphis market area. Its total assets amounted to $296,154.11, and its total stockholder's equity was $114,403.08. It operates eleven transmitter sites with a twelfth under construction, and it employs seven persons.

Fred Birmingham, Jackson Mobilphone's president, has worked for the carrier since 1986. His family purchased the business in 1988, and he became president in 1989. He has significant, current training and expertise in the radio common carrier business. Within two years after becoming president, Mr. Birmingham expanded the carrier's service area, improved its service, and restored the business to profitability.

Jackson Mobilphone's strategy is to concentrate on the West Tennessee market. It has no plans to expand into Middle or East Tennessee, and its goal is to provide area-

wide service in all West Tennessee counties. It plans to hire six additional employees and to build at least one new transmitting tower if the commission permits it to expand into the Memphis market area. Jackson Mobilphone also anticipates that it will begin serving its Memphis subscribers quickly and for a low start-up cost by using its existing facilities and staff. It also estimates that its expansion into the Memphis market will become profitable within three years and that its available funds are sufficient to defray its operating expenses until that time.

Two brothers, Alvin and Frank Escue, incorporated Multipage in 1991 to take advantage of the new business opportunities created by the 1991 amendments to the SRCCA. Both Escues possessed great personal wealth and were familiar with the paging business through their ownership of paging businesses in Alabama, Kentucky, South Carolina, and Tennessee. Their relationship with the paging business is somewhat dated since they sold most of their paging holdings a number of years ago except for Frank Escue's interest in a small, private carrier in South Carolina.

Multipage existed only on paper at the time of the administrative hearing. It had never received authority to provide radio common carrier service in any Tennessee market, and it had no employees, no transmitter or other equipment, and no assets except for $1,000 of paid-in capital. The Escue brothers were not only seeking authority to serve the Memphis market area but were also seeking authority to operate in the Nashville, Chattanooga, and Knoxville market areas. They planned to construct five transmitters to serve the Memphis market but had no plans to serve the less populated counties in West Tennessee. They also planned to contract for their sales and technical needs instead of using their own employees.

## C.

We now turn to the manner in which the commission weighed the SRCCA's decision-making factors. For the sake of clarity, we will review the commission's conclusions with regard to each factor in light of the evidence in the administrative record and the administrative judge's initial order.

### PUBLIC NEED

■ The public's need for adequate, economical, and efficient paging services is a seminal issue in any SRCCA licensing proceeding. It is a multi-dimensional matter broad enough to include consideration not only of the number of carriers in a particular market but also the nature and quality of the services to be provided. While the General Assembly's enactment of Tenn.Code Ann. § 65–30–105(f)(2) in 1991 addressed the number of radio common carriers to be permitted in each market area,[11] it did not foreclose the consideration of the other facets of the public need factor.

In addition to being the most populous city in West Tennessee, Memphis is the area's dominant business center. There is a close commercial affinity between Memphis, Jackson, and the other parts of West Tennessee. Many Memphis businesses provide goods and services throughout West Tennessee, and the administrative record contains evidence that many Memphis businesses favor a single paging system serving the entire West Tennessee area and that rural West Tennessee subscribers who do business in Memphis also desire area-wide paging services.

The administrative record also contains proof that few radio common carriers are presently serving or are even planning to serve many parts of rural West Tennessee because of the relative high per capita costs to provide paging services in these sparsely populated areas. In fact, Jackson Mobilphone is the only radio common carrier presently serving all of rural West Tennessee. Multipage's primary interest is linking Memphis, Jackson, and Nashville; it does not propose to serve the less profitable areas in West Tennessee. Accordingly, the continuity of paging service in many rural West Tennessee counties is directly related to Jackson

11. Tenn.Code Ann. § 65–30–105(f)(2) provides that two radio common carriers are the optimum number of carriers needed to provide the highest level of service in each market area. *Deaderick Paging Co. v. Tennessee Public Serv. Comm'n,* 867 S.W.2d at 731.

Mobilphone's continuing viability as a radio common carrier.

The availability of paging services in rural West Tennessee is not the only facet of public need implicated in these proceedings. Without a single carrier providing paging services in both the Memphis and rural West Tennessee markets, subscribers desiring service in both Memphis and other parts of rural West Tennessee must contract with and pay fees to two separate carriers. Thus, the cost of area-wide service will be higher because subscribers must do business with two carriers instead of one. The administrative judge noted that this phenomenon existed in both the Memphis and Chattanooga market areas and accordingly recommended awarding the new authority to carriers that would serve both the urban and surrounding rural areas.

The commission never directly addressed the public need question in its opinion. Without explanation, it affirmed the administrative judge's decision concerning the Chattanooga market area but reversed his decision concerning the Memphis market area. The administrative record contains substantial and material evidence concerning the subscribers' need for area-wide service and the added costs for these services if subscribers must contract with two carriers to obtain it. The commission should have addressed these public need questions and should have articulated its reasons for treating West Tennessee subscribers differently than the subscribers in Chattanooga and its surrounding counties. Tenn.Code Ann. § 65–30–102 prohibits unjust discrimination and undue preferences, and thus the commission should not have arbitrarily failed to consider the needs of all West Tennessee subscribers when it was making its Memphis market area licensing decision.

### THE APPLICANTS' SUITABILITY

■ The commission also misconstrued its administrative judge's conclusions with regard to the applicants' comparative suitability. The administrative judge found that the principals of both Jackson Mobilphone and Multipage had adequate education and experience to serve the Memphis market area. Yet, the commission stated that the administrative judge "correctly found that the principals of Multipage, Inc. have more experience in the paging business." [12]

The administrative record does not contain substantial and material evidence that the Escue brothers' experience is superior to Fred Birmingham's. Mr. Birmingham directly manages Jackson Mobilphone's day-to-day business affairs and has a background in computers and ten years of experience in the telephone and paging industry. Under his leadership during the past four years, Jackson Mobilphone improved the quality of its service, expanded its service area, and became profitable and financially sound.

The Escue family has a long history of owning communications and paging businesses, but the extent of Alvin and Frank Escue's operating knowledge and experience is less clear. Alvin Escue has owned paging businesses since the late 1960's, but these businesses were actually operated first by a deceased brother and then by other managers who are not involved with Multipage's present application. Frank Escue has experience operating paging businesses in Kentucky and South Carolina but apparently no experience in Tennessee, and the extent of his planned involvement with Multipage's Tennessee operations is unclear.

Multipage's application indicates that it intends to hire a manager for its Tennessee operations. The person the Escues plan to hire has experience managing paging businesses outside of Tennessee. Nothing in the nature, duration, or quality of his experience, however, provides a basis for concluding that he is a better manager than Mr. Birmingham or that Multipage under his leadership will be a more suitable carrier than Jackson Mobilphone under Mr. Birmingham's leadership.

The commission's conclusion that Multipage was more suitable than Jackson Mobilphone influenced its decision to award the

12. The administrative judge simply noted in his initial order than Multipage's principals had "a wealth of experience in the paging industry."

Memphis market area to Multipage. The record, however, does not contain substantial and material evidence supporting Multipage's superior suitability. Accordingly, we find that the commission acted arbitrarily when it based its decision on this ground.

### THE APPLICANTS' FINANCIAL RESPONSIBILITY

■ The commission also determined that Multipage was more financially responsible than Jackson Mobilphone because its shareholders were wealthier than Jackson Mobilphone's. The Escue family is undoubtedly wealthier than the Birmingham family. It does not necessarily follow, however, that the personal assets of either family will be used to benefit the corporate applicants.

■ Corporations are legal entities separate from their shareholders. *Hadden v. City of Gatlinburg,* 746 S.W.2d 687, 689 (Tenn.1988); *Neese v. Fireman's Fund Ins. Co.,* 53 Tenn.App. 710, 717, 386 S.W.2d 918, 921 (1964). The individual shareholders' purchase of the corporation's stock represents their financial contributions to the corporation, and shareholders are not legally required to make further investments in a corporation unless they have contractually obligated themselves to do so. *Warren v. King,* 108 U.S. 389, 399, 2 S.Ct. 789, 797, 27 L.Ed. 769 (1883); *Helvering v. Richmond, F. & P.R.R.,* 90 F.2d 971, 974 (4th Cir.1937); 18 C.J.S. *Corporations* § 313(a) (1990); 18A Am.Jur.2d *Corporations* § 753 (1985).

Both the Escue and Birmingham families expressed their intent to make additional investments in their companies in order to serve the Memphis market area. However, the administrative record contains no legally enforceable agreements between Multipage and the Escues or between Jackson Mobilphone and the Birminghams that contractually bind either the Escues or the Birminghams to make specific additional investments in their businesses should they receive authority to serve the Memphis market area. Thus, we find that the commission improperly weighed both parties' legally unenforcea-

ble promises to use their personal funds to finance their companies' expansion into the Memphis market area. If anything, the Birmingham family is more likely to infuse additional capital into Jackson Mobilphone in order to preserve the large financial investment they have already made.

■ Contrary to Commissioner Cochran's concern that Jackson Mobilphone was a "small, struggling carrier," the administrative record contains substantial and material evidence that Jackson Mobilphone is financially sound. The commission's manager of revenue requirements and special studies concluded that "each applicant is fully capable of providing the services they are planning to provide" despite his concerns about the "thin capitalization of each applicant." The administrative record contains no proof contrary to this conclusion.

The administrative record likewise does not support the administrative judge's and the commission's conclusion that Multipage's revenue and cost projections were more conservative than Jackson Mobilphone's.[13] In fact, Jackson Mobilphone's projections appear to be more sound than Multipage's for the following reasons. First, Jackson Mobilphone's projections are extrapolations from an ongoing business while Multipage's are purely theoretical. Second, Multipage appears to have underestimated its start up costs when its projections are compared to all other carriers seeking to serve the Memphis market area. Third, the reliability of Multipage's revenue projections is undermined by discrepancies in its presentation concerning the number of pagers it expected to sell and the rates it intended to charge. The commission's manager of revenue requirements and special studies concluded that he could not determine how many pagers Multipage expected to sell because of the conflicts between Alvin Escue's testimony, Multipage's five-year projections, and Multipage's proposed rates.

In summary, we find that the conclusion that Multipage's projections are more conser-

---

**13.** It is not entirely clear that the administrative judge was comparing Multipage and Jackson Mobilphone when he commented about Multipage's conservative projections. The comment

appears in the portion of the initial order discussing Deaderick Paging Company's projections concerning the number of pagers it intended to sell in five years.

vative than Jackson Mobilphone's is not supported by substantial and material evidence. The commission, therefore, acted arbitrarily when it based its decision to award the Memphis market area to Multipage on this factor.

### THE APPLICANTS' ABILITY TO PERFORM EFFICIENTLY

■ Both Jackson Mobilphone and Multipage intend to offer the same basic types of paging services and to charge essentially the same rates for local service in the Memphis market area. The administrative record supports the conclusion of the manager of revenue requirements and special studies that both applicants would be able to provide the services they are planning to provide. Thus, the issue concerns which of the two competing applicants will be able to provide the services more efficiently.

As the administrative judge found, Jackson Mobilphone will be able to provide paging services in the Memphis market area quickly because it is an existing carrier with transmitters already covering portions of the Memphis market area. It will also be able to use its existing sales and technical staff. Multipage, on the other hand, must begin operations from scratch and will necessarily encounter more delay since it must find and lease transmitter sites, hire a sales and technical staff, and sell pagers before it can begin operating.

The commission discounted the administrative judge's conclusion concerning Jackson Mobilphone's ability to begin providing service in the Memphis market area more quickly than Multipage. It determined that the administrative judge has placed too much weight on this consideration because Multipage could lose its authority to serve the Memphis market area if it failed to meet the SRCCA's timetable for obtaining FCC approval and beginning operations.[14]

The prospect that Multipage might lose its authority to serve the Memphis market if it did not begin operating within twelve months[15] has little direct relationship to the comparative efficiency of the two applicants or to fulfilling the SRCCA's mandate of making radio common carrier service easily available to all Tennessee residents. If anything, Multipage's failure to begin operating would only inconvenience customers in the Memphis market area because it would deprive them of the benefit of a second radio common carrier competing for their business.

■ The cost of providing service is also another aspect of efficiency. Jackson Mobilphone has already incurred most of the capital costs needed to enter the Memphis market area. It has already constructed all but one or two of the transmitters it will need to serve the new market area. On the other hand, Multipage's costs to enter the Memphis market area will be much higher because it must build at least twice as many transmitters as Jackson Mobilphone.

Jackson Mobilphone's and Multipage's proposed local rates are similar. However, Jackson Mobilphone's current rate structure is based partially on the capital expenses it has already incurred in setting up its wide area network in rural West Tennessee. Entering the Memphis market area would enable Jackson Mobilphone to use some of these existing resources in a more lucrative market area and thus increase the return on its existing investment. Accordingly, Jackson Mobilphone anticipates that it should eventually be able to offer paging services at lower rates because of increased revenues from the Memphis market area where its costs are lower.

The commission's failure to make specific findings concerning the applicants' comparative efficiency undermines its decision. The administrative record contains substantial and material evidence that Jackson Mobilphone will perform more efficiently in the Memphis market area than will Multipage. The commission arbitrarily failed to consider and weigh this evidence.

---

14. *See* Tenn.Code Ann. § 65–30–105(g)(1), –105(g)(2).

15. Tenn.Code Ann. § 65–30–105(g)(2) permits the commission to extend a carrier's start up schedule for twelve additional months.

## THE EFFECT ON COMPETITION IN THE PAGING BUSINESS

The administrative record contains extensive testimony concerning the impact that the commission's decision would have not only on the applicants themselves but also on the paging industry as a whole. The commission, however, did not directly address the competitive consequences of its decision in the final order,[16] and its oversight is inconsistent with the SRCCA.

The administrative judge directly addressed the proof in the record concerning the competitive impact of the decision and made several pertinent findings. First, he found that Jackson Mobilphone was the only applicant planning to compete with MCCA to provide area-wide radio common carrier service in all of West Tennessee. Second, he found that Jackson Mobilphone was presently operating at a competitive disadvantage because it was facing increased competition in the Jackson market area from carriers who were not serving the other less profitable parts of rural West Tennessee. Third, he found that denying access to the Memphis market area would undermine Jackson Mobilphone's ability to compete in West Tennessee and to provide radio common carrier services to areas in rural West Tennessee that were not being served by any other carrier.

The administrative record contains substantial and material evidence supporting the administrative judge's conclusions about Jackson Mobilphone's competitive position. Preserving Jackson Mobilphone as a viable competitor is consistent with the SRCCA's purposes. The commission should have addressed these issues directly, and its arbitrary failure to do so further undermines the validity of its decision.

## V.

We find that the commission's decision to award Multipage the certificate of authority to operate as a radio common carrier in the Memphis market area was arbitrary and was not supported by substantial and material evidence. Accordingly, we vacate the portion of the commission's order concerning the Memphis market area and remand the matter to the commission for further proceedings consistent with this opinion. We also tax the costs of this appeal to Multipage, Inc. for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.

## ORDER DENYING PETITION FOR REHEARING

Multipage, Inc. has filed a Tenn.R.App.P. 39 petition requesting a rehearing of this court's December 22, 1993 decision. The gravamen of this petition is that this court put undue weight on the capitalization of the corporate applicants and ignored the personal wealth of Multipage's corporate principals while considering the personal wealth of Jackson Mobilphone's principals.

Our conclusion that the Public Service Commission's September 15, 1992 order was arbitrary and not supported by substantial and material evidence was not based solely on financial considerations. Rather, it resulted from the commission's failure to directly address the questions of public need, comparative ability to perform efficiently, and effect on competition and from our conclusion that the commission's findings concerning the applicant's suitability and financial responsibility were not supported by substantial and material evidence.

We have reviewed our earlier opinion and have determined that we have not placed undue weight on any aspect of the proof and that we have not ignored any portion of the evidence. Since we have already considered the issues being raised by Multipage, we respectfully deny its petition for rehearing.

ENTER, this 12 day of January, 1994.

/s/ Henry F. Todd
Henry F. Todd, Presiding Judge
/s/ Samuel L. Lewis
Samuel L. Lewis, Judge

16. Individual commissioners commented on the applicants' ability to compete during the commission's deliberations. Commissioner Cochran, for example, expressed doubts about Jackson Mobilphone's ability to compete with the land line carriers in providing paging service to West Tennessee customers. The administrative record contains little proof to support this observation.

118

/s/ William C. Koch, Jr.
William C. Koch, Jr., Judge