IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 22, 2011 Session

**CITY OF MEMPHIS**

v.

**CLIFTON CATTRON, JR., and CIVIL SERVICE COMMISSION**

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-10-0725-3     Kenny W. Armstrong, Chancellor**

_____

**No. W2010-01659-COA-R3-CV - Filed May 13, 2011**

_____

This is an appeal from the decision of the City of Memphis Civil Service Commission reversing the decision to terminate Clifton Cattron's employment with the City of Memphis. After a thorough review of the record, we affirm the Civil Service Commission's decision that the City of Memphis lacked a reasonable basis for terminating Mr. Cattron's employment.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER J., joined.

Herman Morris, Jr. and Zayid A. Saleem, Memphis, Tennessee, for the appellant, City of Memphis.

Darrell J. O'Neal and LaShawn A. Williams, Memphis, Tennessee, for the appellees, Clifton Cattron, Jr., and Memphis Civil Service Commission.

**OPINION**

**I.  Factual & Procedural History**

This action arises from Appellee Clifton Cattron, Jr.'s termination of employment as a police dispatcher with Appellant City of Memphis (the "City"). The City terminated Mr. Cattron's employment after he cancelled an emergency 911 call on June 10, 2009. On that date, at approximately 2:15 a.m., a 911 call was received and forwarded to Mr. Cattron from a 911 operator. The 911 operator noted that the caller could be heard having difficulty

breathing. After receiving the call at 2:17 a.m., Mr. Cattron's job was to dispatch officers in the field to assist the caller. However, at 2:29 a.m., approximately twelve minutes after receiving the call, Mr. Cattron cancelled the call without having dispatched any officers. At 3:17 a.m., a second call was received regarding a deceased man lying on the sidewalk. It was later determined that the deceased man had, in fact, placed the call that Mr. Cattron cancelled.

Approximately one month later, following an internal investigation, Mr. Cattron was presented with an administrative summons alleging that he had cancelled the call in question and thereby violated DR-120 Neglect of Duty.[1] In a written memorandum, Mr. Cattron accepted that the call was cancelled, but stated that he did not remember any details of the call. On September 30, 2009, a hearing was held by Deputy Chief Donald Boyd, after which the charges against Mr. Cattron were sustained and his employment was terminated. Mr. Cattron appealed the termination to the Appellee City of Memphis Civil Service Commission (the "Commission"). The Commission held an appeal hearing regarding Mr. Cattron's case on February 19, 2010.

Mr. Cattron testified that, on the night of June 10, 2009, he worked the midnight shift as a police dispatcher at Union Station. He stated that he did not remember receiving the call in question and did not recall cancelling the call. The only events that he remembered from that night were a "man-down" call and a police chase. He testified that a dispatcher's job during a police chase could get very hectic due to the high volume of radio chatter between officers that a dispatcher must monitor.

Call logs admitted into evidence indicated that the call in question was received by the 911 operator at 2:15 a.m., forwarded to Mr. Cattron at 2:17 a.m., and cancelled by Mr. Cattron at 2:29 a.m. A second call to 911 came in at 3:17 a.m. reporting a deceased man lying on the curb; police later discovered that the man died from a gunshot wound.[2] An

---

[1]DR-120 Neglect of Duty provides, in relevant part:

> A. Each member, because of his or her rank and assignment, is required to perform certain duties and assume certain responsibilities. Failure to properly function in these areas constitutes neglect of duty. This regulation prohibits any omission or failure to act by any member of the Department, whether on duty or off duty, when such action is required by the stated policy, goals, rules, regulations, orders, and directives of this Department. It applies to any member who, through carelessness, inefficiency, or design, fails to implement the policy, goals, rules, regulations, orders, training, and directives of this Department.

[2]It is likely, although not fully developed in the record, that this was the "man-down" call that Mr.
(continued...)

-2-

investigation of the deceased man's cell phone indicated that he had called 911 at 2:15 a.m. and was, in fact, the victim whose call Mr. Cattron cancelled.

A senior police dispatcher, Eddie Heaston, described the circumstances when a call may be appropriately cancelled and described the process for doing so. Cancelling a call is generally warranted when police officers no longer need to be dispatched to the scene. A dispatcher must complete four separate computer keystrokes to cancel a call. Using a computer keyboard or mouse, a dispatcher must first select the call which he or she wishes to cancel from a list of pending calls; then he or she must select "Cancel Event" from a drop-down menu; then the dispatcher must enter a disposition code providing the reason for the cancellation[3]; finally, the dispatcher must select "OK" to confirm the cancellation.

Mr. Heaston testified that the four-step process ensured that a dispatcher could not accidently cancel a call, even when they were busy. However, multiple witnesses trained as dispatchers indicated that inadvertently cancelling a call was indeed possible. Lakeshia Jones, a dispatch supervisor, testified that a cancelled call could "be done easily" and that there was no mechanism in place to alert a dispatcher after they had cancelled a call. Other witnesses testified that they had inadvertently cancelled calls in the past. These witnesses indicated that a cancelled call could result from simple carelessness, from a busy or distracted dispatcher, from the rote speed with which an experienced dispatcher could enter the necessary keystrokes, or from some combination of these factors.

The witnesses uniformly described Mr. Cattron as a good employee. Mr. Heaston described Mr. Cattron as a "good worker," whom he had not had to discipline. In fact, Mr. Heaston said that he was "shocked" that Mr. Cattron was fired for cancelling a call. Ms. Jones described Mr. Cattron as a "wonderful" employee who had never given her any problems. There was no evidence that Mr. Cattron had ever been disciplined during his more than eight years of employment with the City.

Deputy Chief Boyd, who made the decision to terminate Mr. Cattron's employment, also testified. He stated that cancelling a 911 call without taking any other action is a severe incident that, standing alone, was sufficient grounds for termination. Deputy Chief Boyd was questioned about two other cases in which dispatchers were charged with neglect of duty and received less harsh discipline. The first case involved a dispatcher sending officers to the

---

[2](...continued)
Cattron remembered receiving on June 10, 2009.

[3]Testimony was adduced at the hearing that a dispatcher could bypass entering a disposition code by pressing the keyboard's spacebar.

wrong address, and, in a separate incident, intentionally hanging up on a 911 caller. As a result of these two incidents, the dispatcher received a twenty-day suspension. The second incident involved a dispatcher failing to notify police officers that dogs were present on the scene. When the officers arrived, they shot one of the dogs. This dispatcher received a five-day suspension. Deputy Chief Boyd differentiated these cases from Mr. Cattron's because those dispatchers "took action" and "did not just do away with the call and not render any kind of aid at all."

Deputy Chief Boyd also indicated that, because Mr. Cattron's cancelled call potentially involved a person in need of an ambulance, the 911 operator should have also transmitted the call to the fire department dispatcher. This was not done, and no explanation was given. Deputy Chief Boyd, when questioned, could not explain why disciplinary action was not taken against the 911 operator.

On March 11, 2010, the Commission issued a written decision. The decision summarized the history of the case and the evidence presented at the February 19, 2010 hearing. The Commission then stated, in relevant part:

> After considering all of the evidence and the arguments of the attorneys, the Commission recognizes that receiving and responding to 911 calls is a matter of public importance that cannot be minimized. Unfortunately, the first 911 call was inadvertently cancelled. The Commission cannot conclude that Mr. Cattron's cancellation of that call was intentional or malicious. The Commission cannot conclude from the evidence whether Mr. Cattron or another dispatcher could have dispatched [Memphis Police Department] officers to assist the 911 caller, or whether the 911 caller could have been located following the first call. The Commission concludes that the actions of Mr. Cattron on June 10, 2009[,] did justify discipline. However, considering Mr. Cattron's good work record and lack of previous discipline, the Commission concludes that the City's termination of Mr. Cattron's employment was not reasonable under the circumstances, considering the City's policy of progressive discipline and the City's lesser discipline imposed upon other dispatchers for similar violations of DR 120 – Neglect of Duty.
>
> The Commission believes that the imposition of a substantial suspension would have been an appropriate discipline under the

-4-

circumstances of this case[]; however, the Commission has no authority to modify discipline imposed by management. Its authority is limited only to determining whether the disciplinary action from which the employee has appealed has been shown by a preponderance of the evidence to have been reasonable under the circumstances.

Considering that the discipline imposed upon Mr. Cattron was not reasonable under the circumstances, the Commission must therefore reverse the termination of Mr. Cattron's employment. Mr. Cattron must therefore be restored to his position of employment with the City, with full back pay and benefits.

On April 19, 2010, the City of Memphis filed a petition for writ of judicial review, pursuant to Tenn. Code Ann. § 27-9-114, in the Chancery Court for Shelby County. The City of Memphis maintained, as it does on appeal to this Court, that the Commission's decision was arbitrary and capricious and was not supported by substantial and material evidence. After a hearing on August 26, 2010, and after reviewing the evidence in the record, the Chancery Court entered an order on September 14, 2010, affirming the Commission's decision to reinstate Mr. Cattron.

## II. **Issues Presented**

The City of Memphis timely appealed to this Court, and presents the following issues for our review, as restated in its brief:

> (1) Whether the trial court erred in finding that the Commission's decision reversing the termination of Appellee was not arbitrary, capricious, or characterized by an abuse of discretion?
>
> (2) Whether the trial court erred in finding that the Commission's decision reversing the termination of Appellee was supported by evidence that was both substantial and material in light of the record as a whole?

## III. **Standard of Review**

On appeal, this Court applies the same standard of review used by the trial court in reviewing the Commission's decision. *Davis v. Shelby County Sheriff's Dept.*, 278 S.W.3d

256, 264 (Tenn. 2009); *Morris v. City of Memphis Civil Serv. Comm'n*, No. W2009-00372-COA-R3-CV, 2009 WL 4547688, at *2 (Tenn. Ct. App. Dec. 7, 2009). "Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322." Tenn. Code Ann. § 27-9-114(b)(1); *see also Davis*, 278 S.W.3d at 263. Thus, the applicable standard is found in Tenn. Code Ann. § 4-5-322(h), which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inference, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5) (A) Unsupported by evidence that is both substantial and material in light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

Although this Court's review of the factual findings of the Commission is limited to the provisions in Tenn. Code Ann. § 4-5-322, we review matters of law *de novo* with no presumption of correctness. *Davis*, 278 S.W.3d at 264 (citing Tenn. R. App. P. 13(d); *Cumulus Broad. Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007)).

In this case, the City questions whether the Commission's decision that termination of Mr. Cattron's employment was not reasonable under the circumstances was: (1) "arbitrary,

capricious, or characterized by abuse of discretion or unwarranted exercise of discretion" or (2) "unsupported by evidence that is both substantial and material in light of the entire record." *See* Tenn. Code Ann. § 4-5-322(h)(4)-(5)(A).

The standards of review in Tenn. Code Ann. § 4–5–322(h)(4) and Tenn. Code Ann. § 4–5–322(h)(5) are narrower than those typically applied in other civil cases, and while they are related to each other, they are not synonymous. ***Jackson Mobilphone Co., Inc. v. Tennessee Pub. Serv. Comm'n***, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993). A decision that is not supported by substantial and material evidence is arbitrary and capricious; however, a decision may still be arbitrary and capricious even though it rests on adequate evidentiary support. ***Id.***

"An arbitrary [or capricious] decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." ***Id.*** at 110-111. "Substantial and material evidence is 'such relevant evidence as a reasonable mind might accept to support a rational conclusion' and to furnish a reasonably sound basis for the decision under consideration." ***Penny v. City of Memphis***, 276 S.W.3d 410, 418 (Tenn. Ct. App. 2008) (citations omitted). "The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed." ***Jackson Mobilphone Co.***, 876 S.W.2d at 111. Substantial and material evidence is "something less than a preponderance of the evidence, but more than a scintilla or glimmer." ***Id.*** (citations omitted). Pursuant to statute, we take into account "whatever in the record fairly detracts from its weight," but we cannot substitute our judgment for that of the Commission. Tenn. Code Ann. § 4-5-322(h)(5)(B). "We may reject [the Commission's] determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence." ***City of Memphis v. The Civil Serv. Comm'n***, 239 S.W.3d 202, 208 (Tenn. Ct. App. 2007).

## IV. Analysis

In order to prevail in the proceedings before the Commission, the City must have shown, by a preponderance of the evidence, that Mr. Cattron violated DR-120 and that the violation, in addition to surrounding circumstances, furnished a reasonable basis to terminate his employment. *See* ***Morris v. City of Memphis Civil Serv. Comm'n***, No. W2009-00372-COA-R3-CV, 2009 WL 4547688, at *2-3 (Tenn. Ct. App. Dec. 7, 2009) (quoting ***City of Memphis v. Civil Serv. Comm'n***, 238 S.W.3d 238, 244 (Tenn. Ct. App. 2007)).

In this case, the Commission determined that the City had not met its burden and that "the discipline imposed upon Mr. Cattron was not reasonable under the circumstances." The Commission's stated reasons included, *inter alia*, that: (1) Mr. Cattron's cancellation of the

call was inadvertent and not intentional; (2) Mr. Cattron had a good work record and had not been disciplined prior to this event; (3) the City's policy favored progressive discipline; and (4) the discipline meted out to other dispatchers in similar incidents had not been as harsh as that imposed on Mr. Cattron.

The City raises two principal arguments: (1) that the Commission reached its decision despite evidence that the cancellation process was designed specifically to prevent accidental cancellations; and (2) that the other incidents of lesser discipline relied upon by the Commission were not similar to the instant case. After a thorough review of the record, we conclude that the Commission's decision was supported by substantial and material evidence and was neither arbitrary, nor capricious.

Extensive testimony was adduced at the February 19, 2010 hearing regarding whether a dispatcher could inadvertently cancel a call. The Commission considered evidence that the system was implemented specifically to prevent such an occurrence and that a dispatcher must make four separate, intentional keystrokes to cancel a call. The Commission also heard testimony from individuals trained as dispatchers to the effect that inadvertently cancelled calls, while not common, do sometimes occur. These witnesses indicated that a trained dispatcher could complete the four necessary keystrokes in a matter of seconds, and that, if the dispatcher's attention was diverted, or if the dispatcher otherwise made a computing error, a call could easily be cancelled inadvertently.

We are inclined to note that DR-120 Neglect of Duty does not differentiate between actions that are intentional and those that are inadvertent. *See* supra, note 1. Rather DR-120 specifically applies to "any member who, through carelessness, inefficiency, or design, fails to implement the policy, goals, rules, regulations, orders, training, and directives of this Department." Supra, note 1. For this reason, it appears to this Court that much of the litigation over whether Mr. Cattron intentionally or inadvertently cancelled the call is misplaced. The question before the Commission was not strictly whether Mr. Cattron violated DR-120, but whether such violation, if any, provided a reasonable basis, under all of the circumstances, for termination of his employment.

Nevertheless, the Commission considered the evidence and determined that Mr. Cattron's cancellation of the call was inadvertent. However, this fact, standing alone, was not the basis for the Commission's decision that termination of Mr. Cattron's employment was not reasonable. Rather, it appears that the inadvertent nature of Mr. Cattron's mistake was one of several factors that the Commission considered. As noted above, it appears that the Commission also considered Mr. Cattron's good work record, his lack of previous discipline, the City's policy of progressive discipline, and the lesser discipline imposed upon other dispatchers for similar violations. Each of these factors was supported by substantial

and material evidence in the record. Taken together, these factors led the Commission to conclude that the City's termination of Mr. Cattron's employment was not reasonable.

The City argues that the Commission's reliance on cases of disparate discipline meted out to other dispatchers was misplaced. The first case involved a dispatcher who sent officers to the wrong address, and in a separate incident, intentionally hung up on a 911 caller. This dispatcher received a twenty-day suspension. In the second case, a dispatcher failed to notify police officers that dogs were present on the scene, and when the officers arrived, they shot one of the dogs. This dispatcher received a five-day suspension. It was also adduced that the 911 operator in the instant case failed to send the call in question to the fire department dispatcher for an ambulance and was not disciplined. While the City raised evidentiary issues related to these other cases at the Commission hearing, it has not raised these issues on appeal. Rather, the City's argument goes to the weight that should be placed on such incidents in determining whether the firing of Mr. Cattron was reasonable. The City argues that these other incidents were factually dissimilar from the instant case. We note that "the weight to be given to all the evidence is a question to be determined by the trier of fact." *Arrow Elecs. v. Adecco Employment Servs., Inc.*, 195 S.W.3d 646, 651 (Tenn. Ct. App. 2005) (citing *Stovall v. Clarke*, 113 S.W.3d 715 (Tenn. 2003)). From our review of the record, the Commission was fully apprised of the alleged differences between these particular cases and Mr. Cattron's. The Commission noted that these distinguishing elements went to the weight of the evidence, and the Commission apparently considered that such disparate discipline bore significant weight. We discern nothing in the record to indicate that the Commission improperly considered these other cases.

## V. Conclusion

For the foregoing reasons, we conclude that the Commission's decision, finding that the Appellant City of Memphis failed to show a reasonable basis for terminating the employment of Appellee Clifton Cattron, Jr., was supported by substantial and material evidence and was not arbitrary or capricious. Therefore, we affirm the decision of the Chancery Court upholding the Commission's decision to reinstate Mr. Cattron. Costs of this appeal are taxed to Appellant City of Memphis, and its surety.

_____
J. STEVEN STAFFORD, JUDGE