# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

---

CITY OF MEMPHIS,                          )
                                          )
      Plaintiff/Appellee,          )          Shelby Equity No. 105517
                                          )
vs.                                       )
                                          )
THE CIVIL SERVICE COMMISSION              )          Appeal No.  02A01-9512-CH-00289
OF THE CITY OF MEMPHIS and                )
STANLEY SHOTWELL,                         )
                                          )
      Defendants/Appellants.       )

**FILED**

**November 4, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

### APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE

THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

For the Plaintiff/Appellee:

Monice Moore Hagler
Ronald G. Wyatt
Memphis, Tennessee

For the Defendants/Appellants:

Samuel Morris
Timothy Taylor
Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

ALAN E. HIGHERS, J.

BROOKS McLEMORE, SP. J.

**OPINION**

This case involves a chancery court review of a decision by a civil service commission. The commission had ordered the reinstatement of a police officer. The chancery court reversed the commission's decision, upholding the termination of the officer's employment. We affirm the decision of the chancery court.

In January 1993, Appellant Lieutenant Stanley Shotwell ("Shotwell"), a twenty-one-year veteran with the Memphis Police Department, voluntarily entered the City of Memphis' Employee Assistance Program ("EAP"), seeking help for alcoholism. On January 21, 1993, he signed two different documents. The first was an Alcohol and Drug Treatment Policy ("Treatment Policy"). The Treatment Policy provided that "[a]ll City of Memphis employees have a responsibility and duty to remain free of illegal substances at all times." In signing the Treatment Policy, Shotwell agreed to the following provisions:

> 1. To remain free of illegal drugs for the remainder of your employment with the City.
>
> 2. To agree to random and/or regularly scheduled drug and alcohol screens as directed by EAP staff, EAP Coordinators, and/or Division Director or designee for a period of two years after successful discharge from the EAP.
>
> 3. Immediate reporting for drug alcohol screens when requested.

The Treatment Policy described the penalties for noncompliance with these provisions:

> Should you fail to remain free of alcohol/illegal drugs, whether by test or self admission, or fail to report for a drug screen, immediate action will be taken to protect public safety and City property interests. At the very least, you will not be allowed to work or be on City property for a period to be specified by the EAP staff and/or your division. Resumption of alcohol/illegal drug usage will be reported to management and will result in disciplinary action. If you continue the use of alcohol/illegal drugs, this will result in termination of employment with the City of Memphis.
>
> If you are a police officer, firefighter, or other employee in a safety sensitive position, you may be terminated upon receipt of a first positive drug screen after entrance into the Employee Assistance Program.

The second document Shotwell signed was the EAP Participation Agreement - Self Referral ("EAP Agreement"). The EAP Agreement outlined Shotwell's responsibilities:

> 1. To keep all scheduled appointments.
>
> 2. To comply with all facets of your individual treatment program, including random drug screens (where applicable).

3. To provide the Employee Assistance Program Administrator with information regarding quality of care received by referral sources.

The EAP Agreement provided further that "failure to assume the above stated responsibilities could result in discontinuance of the services of the Employee Assistance Program."

Subsequently, on February 12, 1993, Shotwell signed a third document, an individualized EAP treatment plan tailored specifically for him ("Plan"). It required the following of Shotwell:

1. Remain alcohol and drug free for the remainder of your employment with City of Memphis.

2. Scheduled Monday and Thursday drug screening at Med Labs until modified by EAP staff, Dr. Tom Hickey, and/or Dale Shaefer. Please refer to your agreed Alcohol and Treatment Policy for details and rules. Failure to remain substance free will result in termination of employment. (Emphasis added).

Over the next eighteen months, Shotwell underwent over twenty-eight urine screens, none of which tested positive for alcohol or illegal drugs. Then on September 19, 1994, Shotwell submitted a urine sample which tested positive for the presence of cocaine in his system.

Shotwell was charged with two offenses: (1) a narcotics violation, for testing positive for cocaine use, and (2) failure to comply with regulations, for violating his contract with EAP to remain drug free. An administrative hearing was held. At the hearing, Shotwell confessed to having imbibed alcohol at a police department staff dinner on September 15, four days before the urine screen, and on his birthday, September 20, a day after the screen. He denied having used cocaine and speculated that someone had spiked his drink at the staff dinner. Shotwell said, "I have my suspicions. There is nothing I can say other than I don't know what happened. I got nailed, there is nothing I can say." The summary of the hearing states: "Lt. Shotwell was advised he had been given an opportunity to correct his problem when he entered the Employee Assistance Program and that it was apparent that the contract between he and the City had been violated and that the results would be decisive." Subsequently, Shotwell's employment was terminated.

Shotwell appealed his termination to the Civil Service Commission, and a hearing was held. A number of witnesses testified, including Deputy Chief David Dugger and Shotwell. The three documents Shotwell signed, the Treatment Policy, the EAP Agreement and the Plan, were introduced into evidence. It was undisputed that Shotwell referred himself to the EAP, and did not enter it as a result of a disciplinary incident. Dugger testified that he understood Shotwell's previous statement "I got nailed" to indicate Shotwell's belief that he had been set up, not as an admission of

2

guilt. He also stated that there existed a last-chance contract for disciplined employees, but that Shotwell had not signed one. Dugger testified further that other police officers had been disciplined for positive drug screens but not terminated. However, he testified that all officers who had signed a "last chance" agreement were terminated if they subsequently had a positive drug test. Shotwell's superiors testified that Shotwell was a good employee with no discipline problems. Finally, Shotwell testified that he was in EAP for help with an alcohol problem, that his problem had not affected his work, that he sought out help on his own, that he had not ingested cocaine, that he had read the EAP documents before signing them, that he had signed out of necessity to stay in the program, and that he had felt that some of the language in those documents pertaining to discipline was vague.

After the hearing, the Civil Service Commission reversed Shotwell's termination, finding as follows:

(a) that Mr. Shotwell did voluntarily enter the EAP Program as a self referral and did execute the EAP contract documents presented; (b) that the City was entitled to require Mr. Shotwell to submit to the mandatory urine screen on September 19, 1994, as a condition of his EAP Program; (c) that Mr. Shotwell's urine screen was properly administered by the Methodist Hospital laboratory, that the urine sample was properly handled and tested, and that the positive result was scientifically supported; and (d) that based upon the test results, the City had a reasonable basis to impose discipline upon Mr. Shotwell, in accordance with his EAP agreement.

The Commission also finds (e) that at the time of Mr. Shotwell's September 19, 1994 urine screen, he had been employed by the City for approximately 21 years, had no disciplinary record and had a good on the job performance record; (f) that during the course of his EAP Program, Mr. Shotwell had submitted to in excess of 28 urine screens, which except for the September 19, 1994 urine screen, had all produced negative results; (g) that the EAP Program had been mandated by government and implemented by the City to help employees with problems and to the extent possible to conserve its labor resources; (h) that other Police Services Division employees under the EAP Program who have produced positive test results have not been terminated for their first offenses; and (i) that the language of the EAP Participation Agreement - Self Referral is somewhat ambiguous in that it provides for "disciplinary action" in the event of resumption of alcohol/illegal drug usage, "termination" for continuation of the use of alcohol/illegal drugs", and/or "termination" for failure to remain substance free.

Based upon all of the above findings, the Commission concludes (a) that the EAP Program is a mandatory program that must be fairly enforced by the City and not be taken lightly by the employee; (b) that the EAP Program is intended to provide the employee with a second chance with covered problems; (c) that the EAP Program should afford the self referral employee, who has sought out the program, not to avoid discipline, but to obtain help with the problem, with the same opportunity as a management referral employee, who has been referred to the program to avoid discipline and to obtain help with the problem; (d) that a self referral employee should not be required to sign his disciplinary death warrant in order to obtain the help the EAP Program was created to provide; (e) that Mr. Shotwell did violate the

3

terms of his EAP agreement; and (f) that while the City did have a reasonable basis to impose discipline against Mr. Shotwell for his EAP violations, termination for his apparent first offense was not reasonable under all the circumstances of this case.

The Commission reinstated Shotwell to his previous position and awarded him full back pay and benefits.

The City of Memphis (the "City") appealed this decision to the Chancery Court. After reviewing the record and hearing the argument of counsel, the Chancery Court reversed the Commission, finding that the Commission had acted in excess of its statutory authority and, in the alternative, that the Commission's decision was not supported by substantial and material evidence. The Chancery Court noted that the Commission found that Shotwell had committed a violation worthy of discipline but rejected termination as being too harsh for a first offense under the circumstances. The Chancery Court stated "that this is not a reasonable basis that the Commission, after it goes through its litany of complimenting, supporting, reinforcing what the City does, to now reach this conclusion." The Chancery Court found that the agreement signed by Shotwell was unambiguous and that, in essence, the Commission had simply disagreed with the City's zero-tolerance policy towards drug use by police officers.

Shotwell now appeals the decision of the Chancery Court. He argues that the Commission acted properly in reinstating him and that the trial court erred by applying an improper standard of review to the Commission's decision.

Tennessee Code Annotated § 4-5-322 sets forth the standard of review for the Chancery Court in reviewing agency decisions such as those of the Commission:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

4

(i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors which affect the merits of such decision.

Tenn. Code Ann. § 4-5-322(h)-(i) (Supp. 1996). The standard for appellate review of such actions is the same as the standard for the Chancery Court's review. *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. App. 1993); *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980). This standard of review is "narrower than the standard of review normally applicable in other civil cases." *Jackson Mobilphone*, 876 S.W.2d at 110.

The "arbitrary and capricious" standard under Section 4-5-322 (h)(4) is discussed at some length in *Jackson v. Mobilphone*:

> [A]gency decisions with adequate, evidentiary support may still be arbitrary and capricious if caused by a clear error in judgment. . . .
> A reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(4)'s "arbitrary and capricious" standard of review mechanically. In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment. . . . An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, . . . or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

*Jackson Mobilphone*, 876 S.W.2d at 110-11 (citations omitted).

In this case, it is undisputed that Shotwell signed the Plan, a treatment program individualized for him, and that the Plan stated that Shotwell was required to:

1. Remain alcohol and drug free for the remainder of your employment with City of Memphis.

After setting forth required drug screens twice weekly, the Plan states unambiguously:

Failure to remain substance free will result in termination.

It is also undisputed that Shotwell consumed alcohol twice, first at a staff party and then on his birthday. Shotwell alleged that he tested positive for cocaine because his drink was spiked at the party four days before the drug screen, but he provided no evidence to support this speculation.

At the Commission's hearing, Lieutenant Dugger testified generally that there had been instances in which other unnamed police officers tested positive for drug use and were not fired. However, there was no evidence that officers who had signed agreements that stated "failure to remain substance free will result in termination" were nevertheless not fired. Indeed, Dugger testified that in each instance in which the office had signed a "last chance" agreement, the officer

5

was fired. Shotwell notes that he never signed a "last chance" agreement, but the individualized Plan he signed states unambiguously that a positive result on a drug screen "will result in termination."

In this case, the Commission emphasized that Shotwell referred himself to the EAP, found that other police employees in the EAP who had positive drug screens had not been fired, and termed the language in the EAP Agreement "somewhat ambiguous." Significantly, the Commission stated:

> . . . that a self referral employee should not be required to sign his disciplinary death warrant in order to obtain the help the EAP Program was created to provide. . . .

In its ruling, the Chancery Court observed:

> In this Court's opinion, a fair reading of what the Commission has done is that they have ruled, in essence, that they disagree with that zero tolerance policy.

The record supports this observation.

The Commission acknowledged that the City had "a reasonable basis to impose discipline against Mr. Shotwell for his EAP violations," but concluded that termination was not reasonable. However, the undisputed evidence in the record establishes that the City had a reasonable basis for termination. Regardless of any ambiguities in other documents, the Plan signed by Shotwell is stark in its clarity: "Failure to remain substance free will result in termination of employment." Shotwell admitted that he did not remain alcohol-free and produced no evidence that the positive drug screen for cocaine was the result of a mistake or a "set-up." Under these circumstances, we must conclude that the Commission's decision to reinstate Shotwell was arbitrary and capricious. We affirm the decision of the Chancery Court, reversing the Commission and upholding the termination of Shotwell's employment.

We are mindful of the fact that Shotwell is a twenty-one year veteran of the police force who, until his substance problems arose, had no disciplinary record and a good job performance record. Termination is indeed a harsh result. However, particularly for a sensitive position such as that of a police officer, the City must be permitted to impose a zero-tolerance policy to combat substance abuse within the police force, without such a policy being undermined by the Commission.

6

The trial court is affirmed.  Costs are assessed against Appellant, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**BROOKS McLEMORE, SP. J.**