# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

CITY OF MEMPHIS,                          )
                                          )
    Plaintiff/Appellee,               )    Shelby Chancery No. 102642
                                          )
vs.                                       )
                                          )
CIVIL SERVICE COMMISSION OF               )    Appeal No. 02A01-9607-CH-00158
THE CITY OF MEMPHIS, AND                  )
DAVID LOCASTRO,                           )
                                          )
    Defendants/Appellant.             )

**FILED**

**November 14, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE C. NEAL SMALL, CHANCELLOR

For the Plaintiff/Appellee:        For the Defendant/Appellant,
                            David Locastro:

Monice Moore Hagler          William D. Massey
Alicia A. Howard             Memphis, Tennessee
Memphis, Tennessee

**REVERSED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This case involves the review of a decision by the City of Memphis Civil Service Commission. A firefighter was terminated for conduct unbecoming a firefighter. The Civil Service Commission reinstated the employee, and the trial court reversed that decision. We find that the decision of the Civil Service Commission was not arbitrary or capricious and was supported by substantial and material evidence. Consequently, we reverse the decision of the trial court.

On April 21, 1992, officers in the Memphis Police Department's Organized Crime Unit executed a search warrant at the residence leased to Brenda Sue Fowler ("Fowler"). At the time, Appellant David Michael Locastro ("Locastro") was living with Fowler. The officers announced their presence and purpose and then broke into the home. In response to the officers' questions, Locastro admitted that there was marijuana in the bedroom closet. The officers found a total of one and a half pounds of marijuana, a set of triple-beam scales, and $710 in cash in the bedroom. Locastro had $174 in his wallet. Officers later found an additional six pounds of marijuana and $2,000 in cash at Fowler's brother's house. The officers arrested Fowler and Locastro on charges of possession of a controlled substance with intent to manufacture/deliver/sell.

Both Fowler and Locastro were questioned by the police. Both then signed statements prepared by the police officers. Locastro's statement contained the following admissions:

Q. The marijuana found in your home[,] who did it belong too[sic]?

A. The two of us, she arranged to have it in, I knew it was there.

Q. How long have you been selling marijuana from your home?

A. 4 to 5 weeks.

Locastro admitted that Fowler had gone to Dallas, Texas, to arrange to have the marijuana brought to Tennessee. Locastro took some of the marijuana to Fowler's brother's house. He said he did not know how much he transported. When questioned about how much of the money seized in the arrest came from drug sales, he answered, "I guess that money that was found in her radio." Locastro acknowledged that he had not been forced to give the statement and signed it.

In her statement, Fowler stated that the marijuana found at the residence belonged to her. She admitted that she had been selling marijuana since February and that she had arranged for the marijuana to be brought in from Texas. Fowler said that $500 of the money found in her home had been obtained through the sale of marijuana. She stated that Locastro had taken approximately five and a half pounds of marijuana to her brother's house. None of her other statements implicated

Locastro.

At the time of his arrest, Locastro was employed as a firefighter with the Memphis Fire Department. On April 24, the deputy director of the Fire Department contacted Division Chief Larry McKissick ("McKissick") and instructed him to conduct an investigation and get back to him as soon as possible. McKissick then obtained a copy of Locastro's arrest ticket and his statement to the police. McKissick called Locastro's supervisor, telling him to inform Locastro that he was suspended pending investigation and to stay at the engine house until McKissick could get there to talk with him. At approximately 9:00 that morning, McKissick reached the engine house and gave Locastro a notice of investigation, charging him with possession of marijuana and "conduct unbecoming an employee of the city of Memphis."[1] The notice informed Locastro that a hearing would be held at noon that day, that he was entitled to union representation at the hearing, and that the results of the hearing and investigation could result in disciplinary action, including termination.

Locastro contacted his attorney. His attorney told him that he would be in trial at the time of the hearing, that Locastro should request a continuance, and that Locastro should answer no questions without him and should instead plead his Fifth and Sixth Amendment rights. Locastro asked a union representative if the hearing could be delayed. The union representative contacted an unidentified official who told the representative that the hearing could not be put off. At the hearing, McKissick read the charges, Locastro refused to respond to the charges without the assistance of counsel, and McKissick closed the hearing. During the hearing, Locastro did not ask for a continuance.

Later that day, McKissick prepared a letter informing Locastro of his termination. The letter

---

[1]Locastro was charged with violating Sections 3.26 and 3.8 of Article III of the Fire Division Rules and Regulations. Section 3.26 provides:

> No member shall be in possession of, or use illegal drugs as forbidden by law, including marijuana, while on duty, in uniform, or on city property.

Section 3.8 provides:

> Any act or omission contrary to good order, discipline, or accepted social practice may subject an employee to disciplinary action. When an employee is unable or unwilling to perform the duties of his position in a satisfactory manner, or has omitted any act or acts it was his duty to perform either by training or experience, or whose service is below satisfactory standards, or whose conduct is unbecoming an employee of the City of Memphis, shall be subject to disciplinary action.

read, in pertinent part:

> When questioned about these charges [by the police for possession with intent to sell] in the administrative investigation, you stated that your lawyer had advised you not to answer any questions and that you are taking the fifth amendment.
>
> You were told by Division Chief McKissick that if you did not cooperate in an administrative hearing, that you could be disciplined, up to and including termination. You stated that you understood the charges.
>
> Based upon the information received concerning your arrest of April 21, 1992, and the circumstances surrounding such arrest, I find that your conduct is unbecoming an employee of the City of Memphis Fire Division and has violated Fire Division rules and regulations cited in this letter.

The letter informed Locastro that his termination was based on violations of Article III, Sections 3.4(5) and 3.8 of the Fire Division Rules and Regulations.[2] Locastro appealed this decision to the Civil Service Commission ("the Commission"), which set a hearing.

At the Commission hearing, Locastro presented evidence that he had a good work record with the Fire Department. He stated that, following his arrest, he voluntarily entered the city's Employee Assistance Program ("EAP") and joined Alcoholics Anonymous, doing well in both programs. He also presented evidence that Fowler had plead guilty as the one who had acquired the marijuana with the intent to sell, and that the charges against Locastro were dismissed at the recommendation of the Attorney General.

McKissick testified that he had terminated Locastro based solely on the police report and Locastro's statement. He stated at one point that he would not have terminated Locastro had he known the marijuana was not his, but then testified that he considered Locastro's knowledge that the marijuana was in the house as sufficient to warrant termination. McKissick stated that Locastro's use of marijuana did not play a role in the decision to terminate. He admitted that the EAP was a

---

[2]While the notice of investigation had cited Sections 3.26 and 3.8, Locastro's termination letter actually cited Sections 3.4(5) and 3.8 as the bases for his termination. Even though the letter cited Section 3.4(5), it actually quoted Section 3.4(20), not 3.4(5). Section 3.4(20) is clearly the applicable Section, and it provides:

> Disciplinary action may be taken for, but shall not be limited to the following causes:
>
> ***
>
> (20.) That the employee, during non-duty hours, has engaged in an employment, activity, or enterprise that is inconsistent, incompatible, or in moral, legal, or technical conflict with his duties, functions, and responsibilities as a city employee.

disciplinary option but indicated that he did not like drug use and did not think highly of the EAP's success rate.

Locastro testified that he had used marijuana for several years but was not involved in selling it. Locastro testified that the police officer who prepared his signed statement had written both the questions and the answers on the statement. According to Locastro, the police officer asked him how long *Fowler* had been selling marijuana, to which he answered four to five weeks, but that the officer wrote the question on the statement to indicate that Locastro had been asked how long *he* had been selling marijuana. Locastro stated that he had admitted to the police that he knew the marijuana was in the house but that, contrary to the written statement, Locastro had never indicated that the marijuana belonged to him. Locastro said he signed the statement without reading it, because he was fearful and because he trusted the officer to correctly record the questions and answers.

Jane Hardaway ("Hardaway"), Deputy Director of Personnel for the City of Memphis, testified at the Commission hearing that attorneys were not normally allowed in departmental investigative hearings, but that an attorney could sit outside the hearing room to be available to confer with the employee. In response to questions from the Commission, Hardaway testified:

> Q. So in your last answer I hear that people have an option as to when they can have the [investigative] hearing, is that correct?
>
> A. Well, they have an option. Of course, they can't go on ad infinitum. There has to be -- so that's why when we give a charge letter we give a date for the hearing in the letter. And when the hearing comes then certainly the City feels they have an obligation to make a decision and not leave an employee hanging out with many worries, that sort of thing, Ms. Hurd.
>
> Q. But is it the norm for you, if you are informed as this case is at 9:00, to be prepared by 12:00, does the employee know that he has an option to say can I do it at 5:00? I mean is there an option here, that's what I'm asking.
>
> A. Well, I believe that the City always if the employee says I want to call my wife, I want to do this, I want to do that, I've never known the City to say oh, no, it must be immediately. We try to give that employee some time.

She testified that attorneys usually became involved only after a disciplinary action had been taken.

After the hearing, the Commission decided to reinstate Locastro, finding that the City had failed to carry the burden of proof necessary to sustain Locastro's termination. The Commission found:

> The proof has shown that more evidence was presented to the Commission than was before Chief McKissick when the decision was made to terminate Mr. Locastro.
>
> The Commission is concerned that the investigation conducted by Chief McKissick

4

was of limited scope and value and a more thorough evaluation of the facts should have been employed prior to a rendering of the termination decision.

The Commission finds that the decision to terminate was not reasonable under the facts and circumstances as presented during the hearing.

The Commission conditioned Locastro's reinstatement upon his remaining involved with EAP. The City appealed this decision to the Chancery Court.

On appeal, after reviewing the record and hearing argument from counsel, the trial court reversed the Commission. During the trial court hearing, the court commented:

It does appear that more notice could have been given before the actual hearing was held, but I don't know what could be presented that would change the facts. And the facts are that he admitted that he was involved with his girlfriend in the acquisition and selling of illegal drugs. Either he did that or he misled the police. He signed a false statement, and he made statements that -- you know, you could get into a lot of ramifications here, statements that would have hampered a police investigation even if he was not involved.

So it just appears to me that adding new proof or new evidence or new testimony to what was already there, which is not needed and would not change the fact that either he was actively involved in selling illegal drugs or he made a false statement or statements, including signing a written statement that would certainly hamper the police investigation and make their job more difficult.

I don't think there is any question that in many cases such as this where more than one person is involved in a crime, you know, one will suffer more if nailed than the other. So you can perhaps speculate, but I think it's pretty well accepted that it's not uncommon for one defendant to take the blame and perhaps they settle up later on.

The trial court's Findings of Fact and Order provided, in pertinent part:

2. The Court finds that even if Locastro was not involved in the selling of illegal drugs, his confession to police that he and his girlfriend were involved in this illegal activity would have constituted making false and misleading official statements and interference with a police investigation sufficient to have justified his termination.

The trial court concluded that McKissick had enough evidence at the investigative hearing to warrant Locastro's termination and that the Commission acted arbitrarily in reversing McKissick's decision. It reversed the decision of the Commission upholding the termination. From this decision, Locastro now appeals.

On appeal, Locastro asserts that the trial court erred because there was substantial and material evidence to support the Commission's decision. The City maintains that the decision of the

5

Chancery Court should be affirmed because the Commission acted in an arbitrary, capricious, and illegal manner.

Tennessee Code Annotated § 4-5-322 sets forth the standard of review for the Chancery Court in reviewing agency decisions:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
> (I) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors which affect the merits of such decision.

Tenn. Code Ann. § 4-5-322(h)-(I) (1991 & Supp. 1997). This review is not *de novo*. *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980). It is "narrower than the standard of review normally applicable in other civil cases." *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. App. 1993). The standard for appellate review of such actions is the same as the standard for the Chancery Court's review. *CF Indus.*, 599 S.W.2d at 540.

In order to determine whether the decision of the Chancery Court should be upheld, we must examine the two statutory bases for reversal raised by Locastro and the City: (1) whether the Commission acted in an arbitrary or capricious manner, or a manner characterized by an abuse of discretion, and (2) whether there was substantial and material evidence to support the Commission's action. *See* Tenn. Code Ann. § 4-5-322(h)(4) and (5).

The issue of whether an agency's decision is arbitrary or capricious or characterized by an abuse of discretion is discussed in *McCallen v. City of Memphis*, 786 S.W.2d 633, 640-41 (Tenn. 1990). In *McCallen*, the Tennessee Supreme Court defines an abuse of discretion as being an action "in opposition to the intent and policy of the statute and of the ordinance adopted conformably to its provisions, as applied to the facts and circumstances of the case." *Id.* at 641. The Court also

6

notes that "[a]buse of discretion, arbitrariness, capriciousness, and unreasonableness are terms often used interchangeably." *Id.* *McCallen* pointed out that, with the arbitrary and capricious standard:

> [T]he court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. An action will be invalidated only if it constitutes an abuse of discretion. If "any possible reason" exists justifying the action, it will be upheld.

*McCallen*, 786 S.W.2d at 641. The Tennessee Court of Appeals has stated that "agency decisions with adequate evidentiary support may still be arbitrary and capricious if caused by a clear error in judgment." *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. App. 1993). The *Jackson Mobilphone* Court explained that "[a]n arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 111 (citations omitted).

Abuse of discretion was discussed by this Court recently in a review of a Civil Service Commission decision, in *City of Memphis v. Civil Service Commission of the City of Memphis and Shotwell*, No. 02A01-9512-CH-00289 (Tenn. App. Nov. 4, 1997). In *Shotwell*, a police officer voluntarily entered the City's EAP for alcohol abuse and signed an agreement stating that "failure to remain substance free will result in termination." Slip Op. at 2. The officer subsequently tested positive for cocaine and admitted use of alcohol. *Id.* He was terminated. *Id.* The Civil Service Commission reversed his termination, finding that "a self referral employee should not be required to sign his disciplinary death warrant in order to obtain the help the EAP Program was created to provide. . .," and that termination was too harsh a result. Slip Op. at 3-4. The Chancery Court reversed this decision and upheld the termination, finding that the City sought to implement a "zero-tolerance" drug policy and that the Commission had "ruled, in essence, that they disagree with that zero-tolerance policy." Slip Op. at 4,6.

On appeal, we affirmed the Chancery Court. Since Shotwell had admittedly tested positive for cocaine and had acknowledged use of alcohol, after signing an agreement stating that "failure to remain substance free will result in termination. . . , " we agreed that the Commission in essence disagreed with the City's zero-tolerance policy and concluded that the Commission's reversal of the termination was arbitrary and capricious. Slip Op. at 5-6.

In this case, the City's initial investigation had virtually no participation by Locastro, because it was held with almost no notice to Locastro and his attorney advised him to refrain from answering questions in the attorney's absence. As noted by the Commission, the Commission was in a position to receive additional evidence, such as Fowler's statement to the police, the dismissal of the charges against Locastro, and Locastro's explanation of his statement to the police. McKissick's testimony was somewhat contradictory; at one point he stated that he would not have terminated Locastro if he had known that the marijuana did not belong to him; however, he stated that Locastro's knowledge that the marijuana was in the house was sufficient to terminate him. The termination decision did not appear to involve a Fire Department drug policy, since McKissick indicated that Locastro's use of marijuana was not a factor in the termination.

Therefore, unlike *Shotwell*, the employee had not signed an agreement acknowledging that the admitted conduct would result in termination. Unlike *Shotwell*, the Commission's decision does not appear to be a disagreement with the City over its drug policy. The Commission had the opportunity at its hearing to assess Locastro's credibility and review the additional information which was unavailable to McKissick. Under the circumstances, we cannot conclude that the Commission's decision was arbitrary or capricious or an abuse of discretion.

Second, the Chancery Court may reverse the Commission's decision if it is not supported by substantial and material evidence in the light of the entire record. This standard "requires a searching and careful inquiry that subjects the agency's decision to close scrutiny." *Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995). "Substantial and material evidence is such relevant evidence as a reasonable mind might accept to support a rational conclusion, and such as to furnish a sound basis for the action under consideration." *Ogrodowczyk v. Tennessee Bd. for Licensing Health Care Facilities*, 886 S.W.2d 246, 251 (Tenn. App. 1994). Substantial and material evidence "requires something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. App. 1988) (citations omitted).

The Memphis Charter sets forth the Commission's role in reviewing the City's action in an

8

appeal:

> If, after presentation of the proof, the commission finds that there exists a reasonable
> basis for the disciplinary action taken, the action of the City shall be sustained.

City of Memphis Charter § 248. The Commission can reverse an action by the City if it finds that the City had no reasonable basis for the disciplinary action it took.

In this case, after hearing the testimony, the Commission apparently found credible Locastro's denial that the marijuana belonged to him or that he was involved in selling it, as well as Locastro's explanation of his statement to the police. However, it is undisputed that Locastro had knowledge of the presence of marijuana in his household and the fact that Fowler was selling it. Nevertheless, the Commission found that the decision to terminate was "not reasonable." Although the issue is somewhat close, we cannot conclude that the Commission's decision was not supported by substantial and material evidence. The decision of the Chancery Court must be reversed, and the Commission's decision to reinstate Locastro must be upheld.

The decision of the trial court is reversed. Costs are assessed against Appellee, for which execution may issue if necessary.


_____
                               **HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**