# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE

## RICHARD FELDMAN v. TENNESSEE BOARD OF MEDICAL EXAMINERS

### Appeal from the Chancery Court for Davidson County
### No. 98-3217-I   Irvin H. Kilcrease, Jr., Chancellor

---

### No. M1999-00474-COA-R7-CV - Decided April 26, 2000

---

The Board of Medical Examiners disciplined a physician for "unprofessional, dishonorable or unethical conduct," and placed his license on probation for one year, with continuation of his practice subject to conditions which included obtaining the "advocacy" of another doctor. The following year, the Board issued a new notice of charges, alleging failure to comply with the conditions in the probationary order. After a hearing, the Board found the physician guilty of the new charges, and placed his license on probation for five years, with new conditions placed upon the continuation of his practice. The physician petitioned the chancery court for judicial review of the Board's action. The chancellor affirmed the order of the Board. On appeal, we affirm the new order of probation, but reverse as to those conditions which are unsupported by the evidence in the record.

**Tenn. R. App. P. 7 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; and Remanded**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which KOCH, and COTTRELL, JJ joined.

Frank J. Scanlon, Nashville, Tennessee, for the appellant, Richard Feldman.

Paul G. Summers, Attorney General and Reporter, Michelle Hohnke Joss, Assistant Attorney General, for the appellee, Tennessee Board of Medical Examiners.

### OPINION

### I.
#### PROBATION

In 1997, the Tennessee Board of Medical Examiners heard charges of "unprofessional, dishonorable or unethical conduct" against Dr. Richard Feldman, a Nashville physician in private practice. See Tenn. Code. Ann. § 63-6-214(b)(1). The substance of the charges had to do with inappropriate conduct towards female patients and staff.

On February 10, 1997, the Board issued findings of fact consistent with the charges. These included findings that Dr. Feldman had engaged in sexual intercourse with a teenage patient, had made derogatory and insensitive comments to female staff and patients, and that he had exchanged medical treatment and prescriptions for sex at a massage parlor. The Board put Dr. Feldman's license to practice medicine on probation for one year, and set conditions upon his practice during the period of probation. The conditions relevant to this appeal are recited below:

> Respondent shall obtain the advocacy of David Dodd, M.D. of the Physicians' Health Program within three months of the effective date of this Order or face automatic suspension.

> It is Respondent's responsibility to obtain Dr. Dodd's advocacy and report back to the Board within ninety (90) days with evidence that he has obtained Dr. Dodd's advocacy to continue practice while undergoing evaluation and, if necessary, therapy for impulse control problems.

Other conditions included personal delivery by Dr. Feldman of the Board's order to the Medical Director and administrator of all hospitals in which he had been granted practice privileges, as well as a civil fine of $2,500.

## II.
### NEW CHARGES

On February 6, 1998, the Board issued a new Notice of Charges against Dr. Feldman, which alleged that he had failed to obtain the advocacy of Dr. Dodd, and had failed to submit the required notice to the Board.

### a. Advocacy

A contested case hearing on the new charges was convened before an administrative judge on July 21, 1998, with the Board sitting as a jury. Dr. Dodd testified that he had been the director of the Tennessee Medical Foundation, a program for physicians impaired by mental or emotional illness, and that the foundation offered "advocacy" for impaired physicians in their dealings with hospitals, insurance companies, courts, and the Board of Medical Examiners, in exchange for compliance with recommended treatment and documentation of effort.

Dr. Dodd agreed to advocate for Dr. Feldman, and recommended that he go to a specific psychiatrist at the Menninger Clinic for a psychological assessment. After an assessment of several days in early March 1998, Dr. Feldman was diagnosed with narcissistic personality disorder and sexual addiction, two conditions that require long-term treatment. The assessing psychiatrist recommended that Dr. Feldman return to the clinic for six continuous weeks of treatment. Dr. Feldman did return, but left the Menninger Clinic after three weeks. After returning, he did not communicate with Dr. Dodd, and he lost Dr. Dodd's advocacy.

Dr. Feldman subsequently returned to the Menninger Clinic, and completed three additional weeks in two sessions. He also began treatment with a psychologist, Dr. Larry Weitz, and began attending regular meetings of Sex Addicts Anonymous. Dr. Weitz testified that Dr. Feldman had made real progress in dealing with his problems. The week prior to the hearing, Dr. Dodd and Dr. Feldman signed an agreement to restore Dr. Dodd's advocacy

### b. Notice

Dr. Feldman's testimony was somewhat self-contradictory in regard to his attempts to notify the Board of his compliance with its orders. He said that he attended a Board meeting in order to personally tell Dr. David Cunningham, the Chairman of the panel that heard his case, that he had obtained Dr. Dodd's advocacy within the period of time required by the 1997 order of probation, but that the security officers physically prevented him from approaching. He also claimed that he telephoned Dr. Cunningham several times, and left messages for him on four or five occasions, but that none of his messages were ever returned.

Dr. Feldman also testified that he thought that Dr. Dodd's own contact with the Board would satisfy the requirement of notice. In response to questions, he complained that the Board's order did not specify in what manner the Board was to be notified, and he claimed to be following his attorney's suggestions as to the methods of notification to employ.

### c. The Board's Findings

The Board of Medical Examiners found after deliberation that Dr. Feldman had failed to obtain the advocacy of Dr. Dodd, and failed to report such advocacy to the Board. In an order filed August 31, 1998, the Board concluded that Dr. Feldman's failure to comply with a lawful order of the Board constituted unprofessional conduct in violation of Tenn. Code. Ann. § 63-6-214(b)(1) and (b)(2).

The sanctions imposed by the Board for Dr. Feldman's unprofessional conduct were prefaced by a policy statement:

> This action is taken so that this physician can continue to provide proper and adequate care to the citizens of the State of Tennessee and for the safety and welfare of the citizens of Tennessee.

> Among the sanctions ordered were the following:

> 1. Respondent's license is placed on PROBATION for a period of five (5) years, effective July 21, 1998.

> 2. Respondent must maintain the continued advocacy of the Tennessee Medical Foundation for the entire probationary period (five (5) years) or face automatic suspension.

3. Respondent shall submit in writing proof of his continued advocacy by the Tennessee Medical Foundation to the Board yearly. The reports shall be sent by certified mail to the Tennessee Board of Medical Examiners, attention Linda Hudgins, 1st Floor, Cordell Hull Building, 425 Fifth Avenue North, Nashville, TN 37247-1010.

4. Respondent must obtain an evaluation by the Menninger Clinic yearly throughout the entire term of his probation. Respondent must provide the written results of his yearly evaluation to the Tennessee Board of Medical Examiners and to the Tennessee Medical Foundation.

### d. Proceedings in Chancery Court

On October 28, 1998, Dr. Feldman filed a petition for judicial review in the Chancery Court of Davidson County. See Tenn. Code. Ann. § 4-5-322. The Court affirmed the action of the Board of Medical Examiners, finding that there was substantial and material evidence in the record to support the Board's finding that Dr. Feldman violated its order of February 11, 1997, and was guilty of unprofessional conduct. Further, the court found that the Board did not act arbitrarily or capriciously, nor did it abuse its discretion, in imposing the sanctions it did. This appeal followed.

### IV.
#### ARGUMENTS ON APPEAL

Upon appeal of a decision taken by an administrative agency following a contested case proceeding, the standard of review in this court is the same as it is in the chancery court. *Ware v. Green*, 984 S.W.2d 610, 614 (Tenn. Ct. App. 1998). That standard is stated in Tenn. Code. Ann. § 4-5-322(h):

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

-4-

## a. Findings of Fact

Dr. Feldman argues on appeal that the Board's findings of fact are unsupported by substantial and material evidence in the record. He contends that since it is unrefuted that he met with Dr. Dodd, and that Dr. Dodd agreed to advocate for him less than two weeks after the Board's order of February 11, 1997, there is no evidence that he failed to obtain Dr. Dodd's advocacy as required by the order. He also contends that he made all reasonable attempts to report his status to the Board, and that the fact that those attempts were unsuccessful does not, under the circumstances, support the Board's finding that he violated its order. We do not agree with either of these arguments.

The record indicates that the advocacy of Dr. Dodd was a requirement the appellant had to meet in order to continue practicing medicine while his license was on probation. It is true that the order said that he had to "obtain" that advocacy within three months, but it appears obvious to us that the purpose of the requirement was to give Dr. Feldman a reasonable amount of time to arrive at an appropriate arrangement, not to enable him to practice without having to meet the requirements established by Dr. Dodd.

Dr. Dodd's testimony indicates that his advocacy was not intended to be a one-way street, but was conditional on the appellant's compliance with the treatment Dr. Dodd recommended. Both Dr. Feldman's and Dr. Dodd's testimony indicate that Dr. Feldman did not complete his treatment at the Menninger Clinic in a manner consistent with Dr. Dodd's wishes, and that when Dr. Feldman returned from the clinic after three weeks, he failed to contact Dr. Dodd for an extended period of time.

Dr. Feldman testified that he cut his treatment at the Menninger Clinic short because of a continuing financial crisis in his practice that required his attention. If he had informed Dr. Dodd of this circumstance, perhaps Dr. Dodd would have found another way to make sure that the appellant received appropriate treatment. Instead, Dr. Feldman avoided Dr. Dodd, and began a course of treatment of his own choosing. We do not believe such self-treatment meets the advocacy requirements set out by the Board. We note that in its more recent order, the Board eliminated any possible ambiguity by requiring the appellant to "maintain the continued advocacy of the Tennessee Medical Foundation," rather than just to obtain it.

As for his failure to notify the Board, we find it difficult to believe that a man as well-educated as Dr. Feldman would be unable to discover an appropriate method to communicate with the Board that regulates his own profession. We note that the appellant managed to pay the civil penalty assessed by the Board, and to call to confirm that his check had been received. We also find it unworthy of belief that Dr. Feldman thought the notification requirement of the Board's order was somehow satisfied by contact between Dr. Dodd and the Board. Again, the Board attempted to forestall any future use of such an argument by specifying the means of notification in its order of August 31, 1998.

Dr. Feldman also argues that the Board erred in finding that his failure to comply with its orders constituted unprofessional conduct. The gist of his argument is that the term should be

reserved only for the most egregious conduct, conduct that also must be considered immoral or dishonorable.

We note, however, that Tenn. Code. Ann. § 63-6-214(b) sets out grounds for disciplining a medical license, and that these include "[u]nprofessional, dishonorable or unethical conduct." In its deliberations, the Board determined that Dr. Feldman's conduct was unprofessional, but could not be considered dishonorable or unethical, thus sustaining a valuable distinction that the appellant would rather we ignore. Such a distinction is consistent with the idea that an individual who has been entrusted with a license to a practice medicine is charged with a higher standard of conduct than is a layperson

### b. The Severity of the Sanctions

Dr. Feldman argues that the five year probation imposed by the Board amounted to an arbitrary or capricious decision because it is "not based on any course of reasoning" or it "disregards the facts or circumstances of a case without some basis." *Jackson Mobilphone v. Tennessee PSC*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993).

We note, however, that in his testimony, Dr. Dodd stated that rehabilitation for narcissistic personality disorder is a long-term process. Further, Dr. Larry Weitz stated that from his long experience of working with people who have addictions, it is a lifelong process, and that addiction is managed rather than cured. It thus appears to us that putting the appellant's license on probation for five years while he continues in treatment is based upon sound reasoning, and is not arbitrary or capricious.

We feel otherwise about the Board's requirement that Dr. Feldman submit to an annual assessment at the Menninger Clinic, and that the written results of that assessment be submitted to the Board of Medical Examiners and the Tennessee Medical Foundation. Dr. Feldman particularly objects to the requirement that the Menninger Clinic report to the Board, for any such report would become part of the public record by operation of law.

We agree with the appellant that there is no proof in the record that annual evaluations at the Menninger Clinic are advisable from a rehabilitation point of view. The record indicates rather that Dr. Feldman's treating doctors at Menninger did not want him to return, but felt that the responsibility for his treatment and evaluation rested appropriately with his current providers. Both Dr. Dodd and Dr. Weitz testified that Dr. Feldman had made significant progress and was on the right track to rehabilitation, and neither recommended a return to the Menninger Clinic for any purpose. We therefore find there to be no material evidence in the record to support this portion of the Board's order.

### V.

We vacate paragraph 4 of the order of the Board of Examiners, which requires the appellant to undergo annual evaluations at the Menninger Clinic, and to supply written results of such

evaluations to the Tennessee Medical Foundation and the Board of Medical Examiners. In all other respects, we affirm the orders of the trial court and of the Board. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal equally between the appellant, Richard Feldman, M.D., and the appellee, the Tennessee Board of Medical Examiners.