IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2019 Session

## JOHN GARCIA v. SHELBY COUNTY SHERIFF'S OFFICE

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-0274     Jim Kyle, Chancellor**

———————————————————

**No. W2018-01802-COA-R3-CV**

———————————————————

A sheriff's office demoted an employee for failing to follow official policies and procedures during an arrest.  The employee appealed to the civil service merit board.  After a hearing, the board found the employee had neglected his duty as the ranking officer at the scene of the arrest.  But the board modified the disciplinary action to a 30-day suspension and ordered the employee's reinstatement to his former rank.  The employee then sought judicial review.  The chancery court determined that the board's decision was arbitrary and capricious and modified the disciplinary sanction.  We conclude that the board's decision was not arbitrary and capricious.  So we reverse.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

E. Lee Whitwell and Bridgett L. Stigger, Memphis, Tennessee, for the appellant, Shelby County Sheriff's Office.

Thomas E. Hansom, Memphis, Tennessee, for the appellee, John Garcia.

## OPINION

### I.

#### A.

Shortly before midnight on October 20, 2016, the Shelby County Sheriff's Office arrested Jamie McGehee on an out-of-state misdemeanor warrant.  When advised by the

jail that Ms. McGehee could not be held on an out-of-state misdemeanor warrant, the officer who transported Ms. McGehee conferred with his superiors. He then booked Ms. McGehee on a domestic violence charge. The domestic violence charge was later dismissed.

Ms. McGehee's arrest prompted an internal investigation by the Sheriff's Office. The Sheriff's Office determined that Lieutenant John Garcia, among others, had violated applicable policies and procedures. So the Sheriff's Office demoted Lieutenant Garcia to the rank of patrolman.

Lieutenant Garcia appealed the disciplinary action to the Shelby County Civil Service Merit Board. The Sheriff's Office argued that the demotion was justified because Lieutenant Garcia had violated two standard operating rules or SORs: SOR 101, Compliance with Regulations, and SOR 120, Neglect of Duty.[1] SOR 101 authorized disciplinary action against an employee for violation of any applicable policy, law, or regulation. SOR 120, Neglect of Duty, required employees to perform certain duties and to assume certain responsibilities. The scope of an employee's duty varied based on rank and assignment. Employees with supervisory responsibilities such as Lieutenant Garcia were held to a higher standard. Any failure to properly supervise subordinates "through deliberateness, carelessness, neglect, or inefficiency" constituted a neglect of duty.

The Merit Board conducted an evidentiary hearing at which it heard from multiple witnesses. During the course of the hearing, a more complete picture of the events leading up to and surrounding the arrest emerged.

On October 17, 2016, Sergeant Matthew Keaton of the Sheriff's Office learned of an out-of-state misdemeanor warrant against Ms. McGehee. At the time, Ms. McGehee lived in the home of Sheriff's Office Deputy Paul Stojanovic, who was in a relationship with Ms. McGehee. Sergeant Keaton advised Deputy Stojanovic that, if the relationship was to continue, the warrant needed to be cleared.

On October 20, sometime before Ms. McGehee's arrest, Sergeant Keaton spoke to Deputy Stojanovic again about Ms. McGehee's still outstanding warrant. During this conversation, Deputy Stojanovic told Sergeant Keaton about an incident the previous day in which Ms. McGehee allegedly threw a drink on Deputy Stojanovic and slapped his face.

---

[1] The Sheriff's Office determined that Lieutenant Garcia also violated a third rule: SOR 103, Aid Another to Violate Regulations. But no proof was offered at the Merit Board hearing to substantiate this charge.

Later that night, Lieutenant Garcia agreed to accompany Sergeant Keaton and Deputy Adam Malenky to Deputy Stojanovic's home to arrest Ms. McGehee on the outstanding warrant. Each officer arrived in a separate vehicle. Deputy Stojanovic also came to secure dogs that were at his home.

Sergeant Keaton arrested Ms. McGehee, and Deputy Malenky transported her to the county jail. When Deputy Malenky learned that Ms. McGehee could not be held on the out-of-state misdemeanor warrant, he notified Sergeant Keaton. Sergeant Keaton told the deputy to "hang tight" because "there was always more than one way to skin a cat." So Deputy Malenky awaited further instruction outside the jail with Ms. McGehee.

Lieutenant Garcia, Sergeant Keaton, and Deputy Stojanovic were still at the scene. Sergeant Keaton decided to charge Ms. McGehee with domestic violence—simple assault based on the October 19 incident Deputy Stojanovic had reported. Lieutenant Garcia supported this decision. Sergeant Keaton completed the paperwork for the arrest on the computer in the patrol car of Deputy Stojanovic, the purported victim of the domestic violence.

Sheriff's Office policy required the officer in charge to notify its Bureau of Professional Standards and Integrity ("BOPSI") whenever an employee was involved in a domestic violence incident. In such instances, BOPSI assumed administrative responsibility of the scene and relieved the involved officer of duty and secured his weapon. Lieutenant Garcia, as the highest-ranking officer on the scene, notified dispatch of an "on duty domestic," and dispatch notified BOPSI.

Lieutenant Anthony Buckner,[2] the on-call representative for BOPSI, spoke with Lieutenant Garcia. Lieutenant Garcia related the claims that Ms. McGehee had thrown wine or some kind of drink on Deputy Stojanovic the day prior. But when Lieutenant Buckner asked if the local police were involved, he recalled Lieutenant Garcia responding that "we're trying to keep this on a hush, and we have [Ms. McGehee] in custody on a warrant out of Mississippi." From the conversation, Lieutenant Buckner understood that Ms. McGehee was arrested on an outstanding warrant, not a domestic violence charge. So BOPSI did not take charge of the investigation. He told Lieutenant Garcia to provide him with a report.

Lieutenant Garcia filed a field commander's incident summary in the early hours of October 21, which he emailed to Lieutenant Buckner. According to the summary, Deputy Stojanovic reported a domestic assault on October 20. Although mentioning the misdemeanor warrant, the summary stated that Sergeant Keaton "placed suspect McGehee in handcuffs and took her into custody on a straight simple assault D[omestic

---

[2] At the time, Lieutenant Buckner held the rank of sergeant. He held the rank of lieutenant at the time he testified before the Merit Board.

Violence] charge." According to Lieutenant Buckner, the incident summary report was when he first learned that the officers involved were making an arrest for domestic violence.

A subsequent BOPSI investigation concluded that Lieutenant Garcia had failed to follow policies and neglected his duty by making inconsistent statements about Ms. McGehee's arrest, entering false information in the police database, and failing to ensure that the officers on the scene conducted a proper domestic abuse investigation. BOPSI found that Lieutenant Garcia's incident summary report did not accurately describe the events surrounding Ms. McGehee's arrest. And, before making a domestic violence arrest, Sheriff's Office policy required a thorough investigation, which did not occur.

Lieutenant Buckner testified that the inconsistencies in Lieutenant Garcia's incident report went beyond mere mistakes. He believed that Lieutenant Garcia had provided inconsistent facts about an arrest in an official report. And he faulted Lieutenant Garcia for not thoroughly investigating the alleged domestic violence claim and taking a statement from Ms. McGehee and making photographs. Lieutenant Buckner also questioned Lieutenant Garcia's judgment in allowing Sergeant Keaton to write the arrest report on the alleged assault victim's computer.

Lieutenant Garcia maintained that he did his best to comply with the policies and procedures of the Sheriff's Office. He had very little investigative experience. And the experience he had was in investigating property crimes. As he understood the rules, after notifying BOPSI of the "on duty domestic," he had to refrain from further involvement in the investigation and BOPSI was to "take it from there." In his view, he fulfilled his duty by sending a copy of his incident summary report to Lieutenant Buckner.

Lieutenant Garcia pointed out that it was Sergeant Keaton's decision to charge Ms. McGehee with domestic violence, although he acknowledged supporting the decision. Lieutenant Garcia expressed no concern that the alleged assault had occurred the day prior to the arrest. And he saw no problem with using Deputy Stojanovic's computer to write the arrest report.

Assistant Chief Mark Dunbar served as the hearing officer for Lieutenant Garcia's disciplinary proceeding. Chief Dunbar found that Lieutenant Garcia's decision-making the night of Ms. McGehee's arrest fell short of the standard expected of a lieutenant. And he found Lieutenant Garcia guilty of violating SOR 101, Compliance with Regulations; SOR 120, Neglect of Duty; and a third SOR. Although under Sheriff's Office guidelines the violations could have led to Lieutenant Garcia's termination, Chief Dunbar determined that a demotion of two ranks to patrolman was a more appropriate discipline.

4

Before the Merit Board, Chief Dunbar described Lieutenant Garcia as "a pretty good officer" with only one prior disciplinary incident. And he agreed that the situation Lieutenant Garcia faced the night of Ms. McGehee's arrest was unusual. He also acknowledged that there had been only one other "double-demotion" in his thirty-three years with the Sheriff's Office.

The Merit Board modified the demotion to a 30-day suspension. And it ordered the Sheriff's Office to reinstate Lieutenant Garcia to his rank and to reimburse him for any lost wages. The Board found the Sheriff's Office did not meet its burden of proving "just cause" for a demotion. But Lieutenant Garcia had "violated SOR 120-Neglect of Duty by failing to exercise command and control of the scene when he and Keaton went forward with the domestic violence arrest." Among other things, the Board found that, "[a]s ranking officer on the scene, [Lieutenant] Garcia was not sufficiently in complete command of the situation."

## B.

Lieutenant Garcia petitioned the chancery court for a writ of certiorari. The petition alleged that "the County failed to adduce proof at the hearing before the Merit Board to sustain the adverse action taken against Petitioner . . . ." So he argued that the Merit Board's decision was "arbitrary, capricious, illegal, and an abuse of discretion, and unsupported by a reasonable basis and/or by substantial and material evidence/facts."

The chancery court affirmed the Merit Board's factual findings. Even so, the court determined that the decision was arbitrary and capricious because the Merit Board "handle[d] Petitioner's actions differently than similar actions." And the punishment was too harsh in light of "Petitioner's service record" and "the Merit Board's handling of similar matters." Because "Petitioner's actions clearly show[ed] a lack of good judgment," the court agreed that some sanction was warranted. The court upheld the suspension but ordered the Neglect of Duty violation removed from Lieutenant Garcia's personnel file.

## II.

The Sheriff's Office contends that the trial court's ruling should be reversed because the trial court modified the Merit Board's decision based on evidence outside the administrative record. Lieutenant Garcia responds that, even if the trial court erred in considering outside evidence, we should affirm the court's finding that the Merit Board's decision was arbitrary and capricious. He submits that the Merit Board's decision was arbitrary and capricious based on the evidence in the administrative record alone. And he asks that his suspension be overturned.

5

Like the chancery court, we review disciplinary decisions of the Shelby County Civil Service Merit Board using the judicial review standards in the Administrative Procedures Act ("APA"). *See* Tenn. Code Ann. § 27-9-114(a) (2017); *Davis v. Shelby Cty. Sheriff's Dep't*, 278 S.W.3d 256, 262 (Tenn. 2009). The reviewing court may reverse or modify an agency decision

> if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h) (Supp. 2019).

Unless the petitioner raises a procedural issue, judicial review is confined to the administrative record. *See* Tenn. Code Ann. § 4-5-322(g); *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 668 (Tenn. 2016). Here, the petitioner did not allege any procedural issues, and no new evidence was offered in the trial court. So judicial review is limited to the evidence presented to the Merit Board. *See* Tenn. Code Ann. § 4-5-322(g).

We agree with the Sheriff's Office that the administrative record contains no evidence to support a finding that the Merit Board "handled Petitioner's actions differently from similar actions." The chancery court apparently based its finding on evidence outside the record.[3] The reliance on such evidence was not proper. *See In re Billing & Collection Tariffs of S. Cent. Bell*, 779 S.W.2d 375, 379 (Tenn. Ct. App. 1989) (declining to review evidence not in the administrative record); *Freeman v. City of Chattanooga*, No. E2010-01286-COA-R3-CV, 2011 WL 1197676, at *2 (Tenn. Ct. App. Mar. 31, 2011) ("As the Trial Court found, however, petitioner did not show or allege any procedural irregularities by the panel, and thus the Court properly confined its review to the administrative record.").

Reviewing the administrative record alone, we consider Lieutenant Garcia's claim that the Merit Board's decision was arbitrary and capricious. An arbitrary and capricious

---

[3] At oral argument, counsel suggested that the trial court based its finding on statements of counsel about the outcomes of appeals by Deputy Stojanovic and Sergeant Keaton to the Merit Board.

decision represents "a clear error in judgment." *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993). Such a decision "is not based on any course of reasoning or exercise of judgment or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 111 (citation omitted). In reviewing the evidence, we "take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence." *See Davis*, 278 S.W.3d at 265 (citing Tenn. Code Ann. § 4-5-322(h)(5)(B)).

Lieutenant Garcia contends that the decision was arbitrary and capricious because the administrative record does not support a finding that he failed to do anything required by a policy or procedure of the Sheriff's Office. *See Mitchell v. Madison Cty. Sheriff's Dep't*, 325 S.W.3d 603, 618 (Tenn. Ct. App. 2010) ("A decision that is not supported by substantial and material evidence is necessarily arbitrary and capricious."). He notes that the Merit Board included among its findings that he "followed the policies and procedures and made decisions based on good faith and using his own judgment." And Chief Dunbar acknowledged that the circumstances surrounding the arrest were "convoluted" and "unclear."

But the Merit Board prefaced its finding that Lieutenant Garcia followed policies and procedures by the finding that he "was not sufficiently in complete command of the situation." Lieutenant Garcia was the ranking officer on the scene and responsible for the other officers' actions. The requirement that supervisory employees "properly supervise subordinates" falls squarely within SOR 120, Neglect of Duty.

The Merit Board also found that Lieutenant Garcia "fail[ed] to exercise command and control of the scene when he and Keaton went forward with the domestic violence arrest." According to Assistant Chief Dunbar, once Lieutenant Garcia learned that Ms. McGehee could not be held on the out-of-state misdemeanor warrant, he had two viable options. He could have ordered Ms. McGehee released from custody and returned to Deputy Stojanovic's home. Or he could have released her while making arrangements for the couple to be separated overnight. Instead, he allowed Sergeant Keaton to change the basis for the arrest to domestic violence so that Ms. McGehee could be held in the jail. He did not ensure that evidence to support the new charge was documented. And he let Sergeant Keaton complete the arrest report on the official computer of the purported assault victim.

## III.

The chancery court erred in modifying the Merit Board's decision based on outside evidence. The decision was not arbitrary or capricious. So we reverse the decision of the chancery court and remand with instructions to affirm the decision of the Merit Board.

_____
W. NEAL MCBRAYER, JUDGE